SILLS CUMMIS & GROSS P.C.
Joshua N. Howley
Lucas F. Hammonds
30 Rockefeller Plaza
New York, NY 10112
Tel: (212) 643-7000
Fax: (212) 643-6500
*Attorneys for Tibor Klein and Gershon Klein*

| | |
|---|---|
| **Proposed Hearing Date:** | |
| **June 30, 2014 at 10:00 a.m.** | |
| **Proposed Objection Deadline:** | |
| **June 26, 2014 at 5:00 p.m.** | |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>AC I INV MANAHAWKIN LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No. 14-22791 (RDD) |
| In re:<br><br>AC I MANAHAWKIN MEZZ LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No. 14-22792 (RDD) |
| In re:<br><br>AC I MANAHAWKIN LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No. 14-22793 (RDD) |

## MOTION OF TIBOR KLEIN AND GERSHON KLEIN
## FOR ORDERS DISMISSING BANKRUPTCY CASES

Tibor Klein and Gershon Klein (collectively, the "Kleins"), by and through their

undersigned counsel, move this Court for orders dismissing each of the above-captioned

voluntary bankruptcy cases.  In support thereof, the Kleins represent and allege as follows:

## INTRODUCTION[1]

The Kleins seek to have the above-captioned voluntary bankruptcy cases dismissed because they were filed without the necessary corporate authority.  Since shortly after the Debtors filed the petitions, the Kleins have repeatedly demanded that they either establish that the Kleins consented to the filing of the bankruptcy petitions as required by the governing operating agreements and Delaware state law, or withdraw the petitions.  Because the Debtors cannot do the former, and refuse to do the latter, the Kleins now seek orders dismissing the petitions, and awarding the Kleins their attorneys' fees and costs incurred as a result of the unauthorized bankruptcy filings.  It is imperative that these bankruptcy cases be dismissed now because, in addition to being filed without the necessary corporate authorization, the filings may have triggered a default under a full recourse guaranty, which potentially subjects the Kleins to at least $32 million in joint and several personal liability.  For these reasons, as set forth more fully below, the Kleins respectfully request that these bankruptcy cases be dismissed.

## BACKGROUND

1.      On June 4, 2014, AC I Manahawkin LLC ("AC I Manahawkin"), AC I Manahawkin Mezz LLC ("AC I Manahawkin Mezz"), and AC I INV Manahawkin LLC ("AC I INV Manahawkin") (AC I Manahawkin, AC I Manahawkin Mezz, and AC I INV Manahawkin are referred to herein collectively as the "Debtors") commenced the above-captioned bankruptcy cases by filing voluntary petitions under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2.      Upon information and belief, as discussed below in Subsection C, the Debtors filed their bankruptcy petitions without the requisite authority on the eve of an Article 9 UCC

---

[1]      Any capitalized terms otherwise undefined in the introduction shall have the meanings subsequently ascribed to them in this motion.

foreclosure of AC I Manahawkin Mezz's pledge of security to a mezzanine lender, which would have resulted in the mezzanine lender taking control of AC I Manahawkin Mezz and AC I Manahawkin.

### A.    MANAHAWKIN COMMONS

3.    These cases involve The Commons at Manahawkin Village ("Manahawkin Commons"), which is an approximately 321,000 square foot regional shopping center located in Manahawkin, New Jersey.

4.    Manahawkin Commons currently has TJ Maxx, Staples, K-Mart, Pier One, Regal Cinema and Michaels as anchor tenants.

5.    Tibor Klein (37.5%) and Gershon Klein (10%) collectively have a 47.5% interest Manahawkin Commons as a result of an ownership interest in AC I INV Manahawkin in those percentages.

6.    Upon information and belief, AC Retail Equity Fund I LLC ("AC Retail Equity") has or had the remaining 52.5% interest in Manahawkin Commons as a result of an ownership interest in AC I INV Manahawkin in that percentage.[2]

7.    Upon information and belief, Benjamin Ringel ("Ringel") owns 100% of AC Retail Equity.

8.    Manahawkin Commons's ownership structure is through three Delaware limited liability companies.

9.    The Kleins' and AC Retail Equity's ownership interests are directly in AC I INV Manahawkin.

10.    AC I INV Manahawkin in turn owns 100% of AC I Manahawkin Mezz.

---

[2]    Upon information and belief, it appears that AC Retail Equity assigned a portion of its interest in AC I INV Manahawkin to David Goldwasser or GC Realty Advisors, LLC before the bankruptcies were commenced.

11.     AC I Manahawkin Mezz in turn owns 100% of AC I Manahawkin.

12.     AC I Manahawkin is in turn the fee simple owner of the real property where

Manahawkin Commons is located.

13.     Upon information and belief, a true and correct copy of the Manahawkin

Commons ownership structure is attached as Exhibit A to the Declaration of Gershon Klein

dated June 17, 2014 (the "G. Klein Decl.").

### B.     THE DEBTORS' OPERATING AGREEMENTS

14.     On February 3, 2011, an Amended and Restated Limited Liability Company

Agreement of AC I Manahawkin (the "AC I Manahawkin LLC Agreement") was executed.  *See*

G. Klein Decl., Exhibit B.

15.     Pursuant to the AC I Manahawkin LLC Agreement, both Tibor Klein and

Gershon Klein are Members of the Board of Directors of AC I Manahawkin.  *See* G. Klein Decl.,

Exhibit B, pp. A-4 and D-1.

16.     The AC I Manahawkin LLC Agreement provides that the business and affairs of

AC I Manahawkin shall be managed or under the direction of the Board of Directors.  *See* G.

Klein Decl., Exhibit B, p. A-4.

17.     Section 9(j)(iii) of the AC I Manahawkin LLC Agreement states that it "shall not,

***without the prior unanimous written consent of the Member and the Board*** (including all

Independent Directors), take any Material Action[.]"  *See* G. Klein Decl., Exhibit B, p. A-6

(emphasis added).

18.     "Material Action" is defined to include instituting "proceedings to have [AC I

Manahawkin] adjudicated bankrupt or insolvent, . . . or fil[ing] a petition seeking, or consent to,

reorganization or relief with respect to the [AC I Manahawkin.]"  *See* G. Klein Decl., Exhibit B,

p. A-3.

4

19.     Thus, in order for AC I Manahawkin to have the necessary authority to file for voluntary bankruptcy, the Kleins needed to provide prior written consent.  They did not.  *See* G. Klein Decl., ¶ 18; Declaration of Tibor Klein dated June 17, 2014 ("T. Klein Decl.), ¶ 17.

20.     Also on February 3, 2011, a Limited Liability Company Agreement of AC I Manahawkin Mezz (the "AC I Manahawkin Mezz LLC Agreement") was executed.  *See* G. Klein Decl., Exhibit C.

21.     Pursuant to the AC I Manahawkin Mezz LLC Agreement, both Tibor Klein and Gershon Klein are Members of the Board of Directors of AC I Manahawkin Mezz.  *See* G. Klein Decl., Exhibit C, pp. 3 and D-1.

22.     The AC I Manahawkin LLC Agreement provides that the business and affairs of AC I Manahawkin shall be managed or under the direction of the Board of Directors.  *See* G. Klein Decl., Exhibit C, p. 4.

23.     Section 9(j)(iii) of the AC I Manahawkin Mezz LLC Agreement states that it "shall not, ***without the prior unanimous written consent of the Member and the Board*** (including all Independent Directors), take any Material Action[.]"  *See* G. Klein Decl., Exhibit C, pp. 5-6.

24.     "Material Action" is defined to include instituting "proceedings to have [AC I Manahawkin] adjudicated bankrupt or insolvent, . . . or fil[ing] a petition seeking, or consent to, reorganization or relief with respect to the [AC I Manahawkin.]"  *See* G. Klein Decl., Exhibit C, p. A-3.

25.     Thus, in order for AC I Manahawkin Mezz to have the requisite authority to file for voluntary bankruptcy, the Kleins needed to provide prior written consent.  See G. Klein Decl., ¶ 24; T. Klein Decl., ¶ 23.

5

26.     In February 2004, an Operating Agreement of AC I INV Manahawkin was executed.  *See* G. Klein Decl., Exhibit D.

27.     Tibor Klein and Gershon Klein are each members of AC I INV Manahawkin.  *See* G. Klein, Exhibit D, p. 1.

28.     Section 4.2(c)(i) of the AC I INV Manahawkin Operating Agreement provides as follows:

> Notwithstanding any provision of this Agreement to the contrary, the following matters ***shall require a unanimous vote of the Members***, and the Manager shall not take the following actions without such vote:  (i) The consensual dissolution of the Company or the commencement by the Company of any bankruptcy or insolvency proceeding[.]  (Emphasis added).

29.     Thus, in order for AC I INV Manahawkin to have the requisite authority to file for voluntary bankruptcy, the Kleins needed to vote in support of the commencement by AC I INV Manahawkin of a bankruptcy proceeding.  The Kleins were not asked to, and did not provide, the required vote.  *See* G. Klein Decl., ¶ 28; T. Klein Decl., ¶ 27.

**C.    CURRENT LOAN STRUCTURE**

30.     Ringel caused the above-described, three-tiered LLC ownership structure to be put into place in February 2011, when the Debtors obtained $37,000,000 in financing for Manahawkin Commons from RCG LV Debt IV Non-Reit Asset Holdings, LLC ("RCG").

31.     More specifically, on February 3, 2011, AC I Manahawkin borrowed $36,630,000 from RCG in the form of a senior mortgage loan.

32.     As the primary security for this loan, AC I Manahawkin, as the fee simple owner, provided RCG with a first position mortgage on the Manahawkin Commons real property.

33.     As additional security, Ringel and the Kleins each executed a Guaranty of Recourse Obligations of Borrower (the "Guaranty") in favor of RCG.  *See* G. Klein Decl., Exhibit E.

6

34.     Section 9.4(c) of the related Loan Agreement for the $36,630,000 senior mortgage loan shall become full recourse, jointly and severally, "(ii) if the Property or any part thereof shall become an asset in a voluntary bankruptcy or insolvency proceeding[.]"  *See* G. Klein Decl., Exhibit F.

35.     Also on February 3, 2011, AC I Manahawkin Mezz borrowed an additional $370,000 from RCG in the form of a mezzanine loan.

36.     On May 27, 2011, the RCG loans were amended and restated.

37.     The principal amount of the senior mortgage loan was reduced to $31,991,789.35, and the principal amount of the mezzanine loan was increased to $4,941,009.59.

38.     As security for the mezzanine loan, AC I Manahawkin Mezz pledged its interest in AC I Manahawkin to RCG.

39.     Because the Manahawkin Commons property has become an asset in these voluntary bankruptcy proceedings, the Kleins have potentially become personally liable, jointly and severally, under the Guaranty for the full amount of the senior mortgage loan.[3]

### D.      THE DEBTORS' CURRENT PURPORTED MANAGER

40.     The Debtors filed each of their petitions by and through David Goldwasser of GC Realty Advisors, LLC ("Goldwasser"), as Manager.

41.     Despite their combined 47.5% interest in Manahawkin Commons, the Kleins have never had any communications, dealings, or otherwise with Goldwasser.

42.     The Kleins first heard of Goldwasser when they reviewed the Debtors' petitions.

43.     The Kleins do not have any knowledge concerning how, when, or why Goldwasser was purportedly appointed as the Manager of the Debtors.

---

[3]     The Kleins reserve all rights with respect to the Guaranty, including the right to contest liability thereunder.

44.     Notwithstanding Goldwasser's statements in the certificates of resolution attached to the petitions that the Debtors duly called and held meetings to approve resolutions that allegedly authorized the Debtors' filings, the Kleins neither attended or received notice of any such meetings nor approved such resolutions, in writing or otherwise.  *See* G. Klein Decl., ¶ 42; T. Klein Decl., ¶ 41.

### E.     THE DEBTORS HAVE REFUSED TO WITHDRAW THE PETITIONS

45.     On June 11, 2014, the Kleins' counsel sent a letter to the Debtors' counsel which, *inter alia*, requested that the Debtors withdraw the above-captioned bankruptcy petitions because they were filed without the necessary corporate authority as set forth above.  *See* Howley Decl., Exhibit A.

46.     On June 13, 2014, the Kleins' counsel followed up with the Debtors' counsel stating, inter alia, "If you have any credible proof  . . . that [the Kleins] consented to the filing of the petitions, please provide it immediately.  *See* Howley Decl., Exhibit B.  The Debtors' counsel did not respond to this e-mail.  *See id.*, ¶ 5.

47.     The Debtors have refused the Kleins' requests to withdraw the petitions.

## RELIEF REQUESTED

48.     The Kleins respectfully request that the above-captioned bankruptcies be dismissed because (i) the necessary corporate approval for the Debtors to file was absent and Goldwasser did not have the requisite authority to file the petitions on the Debtors' behalf and (ii) as set forth below, lack of authority to file is an independent ground for dismissal of a bankruptcy case.

49.     A bankruptcy court cannot entertain a petition filed on behalf of a limited liability company by a person who does not have the authority to do so, or when corporate approval for the debtor's filing has not been obtained, and the questions of who has the authority to file a bankruptcy petition on a limited liability company's behalf and what approval is necessary are governed by state law.

50.     As stated by the Supreme Court in *Price v. Gurney*:

> The District Court in passing on petitions filed by corporations under Chapter X[4] must of course determine whether they are filed by those who have authority so to act.  In absence of federal incorporation, that authority finds its source in local law.  If the District Court finds that those who purport to act on behalf of the corporation have not been granted authority by local law to institute the proceedings, it has no alternative but to dismiss the petition.

> ***

> [N]owhere is there any indication that Congress bestowed on the bankruptcy court jurisdiction to determine that those who in fact do not have the authority to speak for the corporation as a matter of local law are entitled to be given such authority and therefore should be empowered to file a petition on behalf of the corporation.

324 U.S. 100, 106-07 (1945).  *See also*, *e.g.*, *In re NNN 123 North Wacker, LLC*, 2014 Bankr.

LEXIS 2353, *6 (Bankr. N.D. Ill. May 27, 2014) ("The authority to file a bankruptcy petition on

---

[4]     *Price* was decided under the Bankruptcy Act of 1898, predecessor of the Bankruptcy Code.

behalf of a corporation must derive from state corporate governance law.  In addition to 'cause' under § 1112(b), lack of corporate authority to file is an independent ground for dismissal of a bankruptcy case filed by a corporation") (citing *In re Gen-Air Plumbing & Remodeling, Inc.*, 208 B.R. 426, 430 (Bankr. N.D. Ill. 1997); *Price*, 324 U.S. at 106 (internal citations omitted); *In re E. End Dev.*, 491 B.R. 633 (Bankr. E.D.N.Y. 2013) ("As a threshold issue, the Court must determine whether the Managing Member possessed the requisite authority to file the petition in bankruptcy on behalf of the Debtor. . . . State law governs whether a business entity is authorized to file a petition in bankruptcy.  Therefore, if the Managing Member did not have the authority to file the petition pursuant to applicable state law, then the Debtor's case is subject to dismissal.") (citing *Price*, 324 U.S. at 104; *In re Am. Globus Corp.*, 195 B.R. 263, 265 (Bankr. S.D.N.Y. 1996); *In re Avalon Hotel Partners, LLC*, 302 B.R. 377, 380 (Bankr. D. Ore. 2003); *In re Raljoed Realty Co.*, 277 F. Supp. 225, 226 (S.D.N.Y. 1967), *aff'd per curiam sub nom. In re Park Towers Corp.*, 387 F.2d 948, 967 (2d Cir. 1967)) (internal citations omitted); *In re H & W Food Mart, LLC*, 461 B.R. 904, 906-907 (Bankr. N.D. Ga. 2011) ("It is generally accepted that a bankruptcy case filed on behalf of an entity by one without authority under state law to so act for that entity is improper and must be dismissed.") (citing *In re A-Z Electronics, LLC*, 350 B.R. 886, 891 (Bankr. D. Idaho 2006); *In re ComScape Telecommunications, Inc.*, 423 B.R. 816, 830 (Bankr. S.D. Ohio 2010)); *In re Orchard at Hansen Park, LLC*, 347 B.R. 822, 827 (Bankr. N.D. Tex 2006) (dismissing case filed by single member of LLC where operating agreement and state law required unanimous consent of members; *In re DB Capital Holdings, LLC*, 462 B.R. 142 (B.A.P. 10th Cir. 2010) (affirming bankruptcy court's dismissal of case filed by manager of LLC where operating agreement prohibited manager from doing so).[5]

---

[5]    Although lack of corporate authority to file is a ground for dismissal of a bankruptcy case independent of Section 1112(b) of the Bankruptcy Code under the foregoing cases, the Kleins submit that lack of corporate authority to file could also properly be considered "cause" to dismiss a bankruptcy case under that section and,

51.     A Delaware limited liability company, like each of the Debtors here, is governed

by its limited liability company agreement as set forth in Delaware's Limited Liability Act, 6

Del. C. § 18-101, *et seq.*:

> "Limited liability company agreement" means any agreement
> (whether referred to as a limited liability company agreement,
> operating agreement or otherwise), written, oral or implied, of the
> member or members as to the affairs of a limited liability company
> and the conduct of its business.  A member or manager of a limited
> liability company or an assignee of a limited liability company
> interest is bound by the limited liability company agreement
> whether or not the member or manager or assignee executes
> the limited liability company agreement. A limited liability
> company is not required to execute its limited liability company
> agreement. A limited liability company is bound by its limited
> liability company agreement whether or not the limited liability
> company executes the limited liability company agreement.

6 Del. C. § 18-101(7).  *See also NNN 123 North Wacker*, 2014 Bankr. LEXIS at *6-*7 (noting

that "Delaware state law . . . provides that an LLC will be managed according to the LLC

agreement enacted by its members.") (citing Del. C. § 18-402).

52.     As set forth above, the governing LLC agreements of AC I Manahawkin and AC I

Manahawkin Mezz explicitly provide that unanimous written consent of the directors is required

to file a bankruptcy petition, and Goldwasser did not have that consent because the Kleins, as

directors, did not consent to the Debtors' filings in writing or otherwise.  *See* G. Klein Decl., ¶¶

18 and 24; T. Klein Decl., ¶¶ 17 and 23.

---

further, that "cause" to dismiss under Section 1112(b) otherwise exists in these cases because, among other things, these cases meet several of the criteria of a bad faith filing.  *See, e.g., C-TC 9th Ave. Pshp. v. Norton Co. (In re C-TC 9th Ave Pshp.)*, 113 F.3d 1304, 1311 (2d Cir. 1997) (enumerating the following bad faith factors: "(1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt; (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action; (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights; (6) the debtor has little or no cash flow; (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and (8) the debtor has no employees").

53.     Also as set forth above, the governing operating agreement of AC I INV Manahawkin explicitly provides that its members must vote unanimously to commence a bankruptcy, and that vote did not occur because the Kleins, as members, did not vote to put AC I INV Manahawkin into bankruptcy.  *See* G. Klein Decl., ¶ 28; T. Klein Decl., ¶ 27.

54.     Further, the Kleins neither attended or received notice of any meetings to approve the resolutions set forth in the certificates of resolution attached to the petitions nor approved any such resolutions, despite Goldwasser's representations.  Therefore, any such meeting was not duly held and any such resolutions were not properly approved.  *See* G. Klein Decl., ¶ 42; T. Klein Decl., ¶ 41.

55.     Accordingly, the Debtors' filings were therefore not authorized, and Goldwasser did not have authority to file the petitions under the governing operating agreements or Delaware law.

56.     Accordingly, the petitions should be dismissed.

WHEREFORE, for the foregoing reasons, the Kleins respectfully request that the Court enter orders dismissing these bankruptcy cases, and granting such other and further relief that the Court deems just and proper.

Dated: June 18, 2014                    SILLS CUMMIS & GROSS P.C.
                                        30 Rockefeller Plaza
                                        New York, NY 10112
                                        Tel: (212) 643-7000
                                        Fax: (212) 643-6500
                                        *Attorneys for Tibor Klein and Gershon Klein*

                                        By:   /s/ Lucas F. Hammonds
                                              Joshua N. Howley
                                              Lucas F. Hammonds