**ROBINSON BROG LEINWAND GREENE**
  **GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone No.: 212-603-6300
**A. Mitchell Greene, Esq.**
*Proposed Attorneys for the Debtors and Debtors*
*in Possession*

                       **Hearing Date:**
        **June 30, 2014 at 10:00 a.m.**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICTOF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **AC I INV MANAHAWKIN LLC,** | Case No. 14-22791 (RDD) |
|              Debtor. | |

-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **AC I MANAHAWKIN MEZZ LLC,** | Case No. 14-22792 (RDD) |
|              Debtor. | |

-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **AC I MANAHAWKIN LLC,** | Case No. 14-22793 (RDD) |
|              Debtor. | |

-------------------------------------------------------------X

### OPPOSITION TO MOTION OF TIBOR KLEIN AND GERSHON KLEIN
### FOR ORDERS DISMISSING BANKRUPTCY CASES

        **AC I INV Manahawkin LLC** ("INV"), **AC I Manahawkin Mezz LLC** ("Mezz")

and **AC I Manahawkin LLC** ("LLC" and hereinafter defined together with INV and Mezz

as the "Debtors"), by their proposed counsel, **Robinson Brog Leinwand Greene Genovese**

**& Gluck P.C.**, as and for their opposition (the "Opposition") to the Motion of **Tibor Klein**

**and Gershon Klein** (the "Kleins") for Orders Dismissing Bankruptcy Cases and Motions to

{00682637.DOC;3 }682637

shorten notice with respect thereto (the "Dismissal Motion"), respectfully represents as follows:

## PRELIMINARY STATEMENT

1.      The Dismissal Motion and accompanying motion to shorten time sought the immediate dismissal of these cases although to do so would subject the Debtors' estates to undue prejudice and harm, without consideration of the consequences.  Moreover, this relief was sought on a mere twelve (12) days' notice.  No order has been entered shortening time. The Dismissal Motion is therefore procedurally defective, pursuant to Bankruptcy Rule 2002(a)(4); dismissal motions require twenty-one (21) days' notice.  Debtors submit that the notice provisions with regard to the Dismissal Motion are inadequate, and although they are filing this Opposition, they note for the record that based upon the rules of this Court, notice was not properly given.

2.      The Debtors submit that these cases were filed with authority and with all good intentions. The Dismissal Motions lack any meaningful expression of how these cases are detrimental to the Debtors and/or their estates.  It is submitted that the prejudice to the Kleins with regard to their contingent liability should not serve as a basis for the dismissal of these bankruptcies that are necessary to protect the Debtors' assets for the benefit of all creditors. Moreover, Debtors submit that any allegations that these cases were not filed with proper authority should be overruled because the Kleins, through Tibor Klein ("T. Klein"), consented to the filing, and the Dismissal Motions should be denied.  The Debtors are all Delaware corporations, and submit that they took the necessary and appropriate actions to

protect their Property under the applicable standards by properly exercising their business judgment to preserve their equity.  The UCC Sale compelled the Debtors to file these cases to prevent the forfeiture of valuable estate assets and the loss of control of the Property.  Absent the Debtors filing these cases, the Debtors' property would have been lost, and the creditors and estates unduly prejudiced.  The adverse consequences to the Kleins notwithstanding must not outweigh the actual damages to the Debtors' estates should these cases be dismissed, especially since, as the evidence will bear out, they actually gave their consent. Movants should be estopped from claiming otherwise based upon their misrepresentations to the Court of the facts.

3.      Upon information and belief, Mr. Ringel and T. Klein have been in negotiations for some time with regard to the dissolution of their business relationships, and it is submitted that the Dismissal Motion is nothing but an attempt to exert leverage over Mr. Ringel with regard to those negotiations.  That being said, it was necessary and appropriate for Mr. Ringel and GC to file these cases to preserve the equity in the Debtor's Property for the benefit of all the creditors and parties in interest, and as such, the Dismissal Motion should be denied.

4.      In connection therewith, the Debtors will seek to pay all of their allowed claims according to their respective priorities under the Bankruptcy Code pursuant to either a Plan of Reorganization or re-financing of the Property in an expeditious manner.  Without this Court's exercise of jurisdiction over the Debtors and the protections afforded by the automatic stay, the Debtors will not be able to restructure their debts or reorganize because

{00682637.DOC;3 }682637

their most significant asset would be placed in jeopardy.  The Bankruptcy Code was created just to protect debtors from such losses.

## BACKGROUND

5.       The history of Debtors was, for the most part, as set forth in the Dismissal Motion, or as further set forth below, and in the Declarations of Benjamin Ringel, David Goldwasser and Rena Assouline, filed in support of this Opposition simultaneously herewith, and incorporated by reference.

6.       On June 4, 2014 (the "Petition Date"), the Debtors filed voluntary Chapter 11 Petitions pursuant to 11 U.S.C. §101 et seq. (the "Bankruptcy Code").  Debtors have continued in the possession of their property and management of their businesses pursuant to §§1107 and 1108 of the Bankruptcy Code.

7.       As set forth in the Dismissal Motion, LLC is the owner of a 321,000 square foot regional shopping center located at Manahawkin, New Jersey, otherwise known as the "Commons at Manahawkin Village" (the "Property").  In turn, Mezz owns 100% of LLC, and INV owns 100% of the interests in Mezz.  INV is owned by various parties, including the Kleins, AC Realty Equity Fund ("AC Realty"), LLC (collectively, the "Original Members") and GC Realty Advisors LLC ("GC").  Pursuant to the current debt structure which was detailed in the Dismissal Motion, there is approximately $39,000,000 of debts by and between the Debtors.  The Property had an appraised value in 2011 in excess of $48,000,000.00, which value has only increased since then.  Accordingly, the Debtors submit that there is substantial equity in the Property that must be preserved, which was why steps

{00682637.DOC:3 }682637

were taken to protect the Property.

8.       Pursuant to a Notice of Proposed Sale of Collateral pursuant to New York

Uniform Commercial Code dated May 12, 2014 (the "UCC Sale"), a copy of which is

annexed as Exhibit A, RCG LV Debt IV Non-REIT Assets Holdings, LLC (the "Mezz

Lender") served notice of the UCC Sale of the interests in Mezz pledged to the Mezz Lender.

 Had the UCC Sale occurred, the Mezz property, which are the membership interests in LLC,

would have been sold – and the Original Members and the Debtors would have lost the

Property, and the substantial equity they have built in it.

9.       In order to prevent that from happening, the Debtors, through their pre-petition

counsel, had sought a TRO from an appropriate court on Monday, June 2nd.  Prior to that

date, the Original Members had had numerous discussions with regard to how to best protect

the Property, and had decided to seek a TRO, but if that was unsuccessful, then the next step

would probably be filing for Chapter 11 protection.

10.      When the request for a TRO was denied on June 2nd, the Original Members

continued their discussions about how best to proceed, and it was understood that Benjamin

Ringel, the managing member of AC Realty, the manager of INV, would take the lead, after

consulting with a financial advisor, to retain bankruptcy counsel and prepare Chapter 11

petitions.

11.      As set forth in the Declaration of Benjamin Ringel filed in support hereof, Mr.

Ringel received what he clearly believed to be the consent of T. Klein for the filing of

bankruptcy petitions for the Debtors in order to preserve the Property, and thereafter moved

expeditiously to prepare same.  At no time did T. Klein ever express to Mr. Ringel any

opposition to this process, and as a matter of fact, he clearly supported his efforts to preserve

the Property.  T. Klein also stated that he spoke for his son and would get his son on board.

12.     The undersigned counsel was contacted and retained to proceed with

bankruptcy filings, and given instructions by Mr. Ringel and GC on how to proceed and what

documents to prepare.  In furtherance of those instructions, appropriate assignments of

interest and corporate resolutions were drafted and voluntary petitions prepared.  Those

documents were then emailed by counsel to GC and then by GC to the Original Members.

Since the UCC Sale was scheduled for June 4, 2014, the documents were prepared on an

expedited basis and sent to all the Original Members.  Unfortunately, that Tuesday night was

also the Jewish Holiday of Shavuot, and due to the circumstances, T. Klein advised Mr.

Ringel that they would not be able to sign the documents prior to the beginning of the

holiday.  T. Klein did not, however, express any objections or reservations, but rather he

indicated the signed documents would be returned as soon as possible.  Based upon this

conversation and the apparent authority granted him, Mr. Ringel and GC proceeded to file

these cases on the Petition Date.

## ARGUMENT

13.     It is well settled that the burden to establish cause for dismissal rests squarely

on the party seeking relief.  *In re Greene*, 57 B.R. 272, 276 (Bankr. S.D.N.Y. 1986).  In the

case at bar, for the reasons set forth below, the Debtors submit that the Kleins have failed to

establish sufficient cause for the dismissal of these cases.  In the absence of the

commencement of these bankruptcy cases, the other creditors would have lost the opportunity to be paid.

14.    Moreover, where a cause is in its early stages and a possibility of reorganization exists, dismissal is not warranted.  *In re Cardinal Congregate I*, 113 B.R. 371 (Bankr. S.D. Ohio 1990); *see, also, In re Foundry of Barrington Partnership*, 129 B.R. 550 (Bankr. N.D. Ill. 1991).  In *In re Cardinal Congregate I*, creditors moved to dismiss the case within two months after the filing of the voluntary petition.  The Bankruptcy Court found that because the case was in existence for only a short time, it could not conclude that the debtor had no reasonable probability of rehabilitation.  *In re Cardinal Congregate I*, 113 B.R. at 374.  Significantly, the *Cardinal Congregate I* Court specifically noted that the exclusive period to file a plan had not expired, and that the debtor had manifested its intention to file a plan. *Id.*  Similarly, these cases were only filed on June 4, 2014, and the Dismissal Motion was filed on June 4, 2014,w ithin a month of the bankruptcy filings.  These cases are in the early stages and the Debtors can demonstrate a possibility of reorganization.  Dismissal is not warranted.

15.    Thus, the Dismissal Motion fails to meet the heavy burden in establishing "cause" to dismiss the Debtors' cases.

16.    Pursuant to Delaware Law, it is within the proper exercise of the business judgment to act and take necessary steps to preserve equity.

17.    The business judgment rule provides that "[a] board of directors enjoys a presumption of sound business judgment, and its decisions will not be disturbed if they can be

{00682637.DOC:3 }682637

attributed to any rational business purpose." *Tooley v. AXA Fin*., Inc., 2005 Del. Ch. LEXIS 67, 17 (Del. Ch. May 13, 2005). Although the business judgment rule normally prevents a court from reviewing the decisions of an independent, disinterested board that are made in good faith and in the exercise of due care, there is one narrow "escape hatch." The business judgment rule may be rebutted "in those rare cases where the decision under attack is 'so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.'" The decision must be "egregious," lack "any rational business purpose," constitute a "gross abuse of discretion," or be so thoroughly defective that it carries a "badge of fraud." *Alidina v. Internet.com Corp*., 2002 Del. Ch. LEXIS 156, 13 (Del. Ch. Nov. 6, 2002)

18.     In a case where a board is facing an urgent situation and made a decision to save the company, its decision was found to be protected by the Business Judgment Rule. This determination, combined with threats to the company by the provider of its credit facility forced the company into bankruptcy. *Blackmore Ptnrs., L.P. v. Link Energy LLC*, 2005 Del. Ch. LEXIS 155, 7 (Del. Ch. Oct. 14, 2005).

19.     In cases where the business judgment presumption applies, the subjective bad faith of directors may be inferred from corporate actions which are "so egregious as to be afforded no presumption of business judgment protection." After examining the record, however, the court, however, concluded that there is no basis to draw an inference of bad faith or waste in this case. *Blackmore Ptnrs., L.P. v. Link Energy LLC*, 2005 Del. Ch. LEXIS 155, 32-33 (Del. Ch. Oct. 14, 2005). In the case at bar, the bankruptcy filings should earn the protection of the business judgment rule because it was necessary to preserve the Debtors' Property and businesses, similar to *Blackmore*.

20.     All of the Original Members were aware of the steps that had to be taken to preserve the Property if the TRO request failed, and, at no time did the Kleins express any reservations or objections to the filing of Chapter 11 bankruptcy petitions.

21.     Since all of the Original Members had agreed to take the appropriate steps and were aware of and had received the necessary and appropriate documents in advance of the filing, the Debtors submit that the Kleins had provided their "consent" to the filings, and but for the Jewish Holidays, had indicated that they would have provided their written consent. Debtors have copies of the emails sent by GC to the Original Members on June 3rd with the corporate documents, and will be prepared to submit them at an evidentiary hearing.  It is clear from these emails that T. Klein was well aware of what steps were being taken to preserve the Property.

22.     The Debtors submit that at this juncture, the Kleins should be equitably estopped from claiming they did not consent.  To invoke this doctrine, Debtors must show that they "(i) lacked knowledge or the means of obtaining knowledge of the truth of the facts in question otherwise; (ii) reasonably relied on the conduct of the party against whom estoppel is claimed; and (iii) a prejudicial change of position as a result of their reliance." *Keyser v. Curtis,* 2012 Del. Ch. LEXIS 175, 56-66 (del. Ch. July 21, 2012) (plaintiffs sought to declare that they were the board of directors of the corp. by a contested unanimous written consent, which the court deemed valid, by applying, *inter alia,* the doctrine of equitable estoppel.)  Debtors (i) had no reason to believe that the Kleins would not consent, having been given every indication that they had consented, (ii) that based upon this apparent

{00682637.DOC:3 }682637

consent/authority, Mr. Ringel and AC Realty reasonably relied upon such consent to take actions in furtherance thereof (the transfer of interests, the management of the Debtor and the filing of the petitions), and (iii) would have suffered a prejudicial change had they not acted on such reliance.  Accordingly, Debtors submit that the Kleins should not be able to deny that they consented to the filing, and accordingly, the Dismissal Motion should be denied.

23.    The Kleins argue that the Debtors did not have their actual authority to file. The Debtors believed that Mr. Ringel had, however, received their apparent authority. Apparent authority is the authority which, though not actually granted, a principal knowingly or negligently permits an agent to exercise, or which he holds himself out as possessing.  To find apparent authority, the party seeking to show the existence of such authority, must "show reliance on indicia of authority and such reliance must be reasonable."  Where a party relies on an agent's apparent authority in good faith and is justified in doing so by the surrounding circumstances, the parties are bound to the same extent as if actual authority had been granted.  *B.A.S.S. Group, LLC v. Coastal Supply Co.,* 2009 Del. Ch. LEXIS 166, 19 (Del. Ch. June 19, 2009).  The Debtors, relying upon T. Klein's agreement with Mr. Ringel to take whatever steps necessary to protect the Property, filed their Chapter 11 Petitions on the Petition Date.  *Flaa v. Montano,* 2013 Del. Ch. LEXIS 244, 32-34 (Del. Ch. Oct. 4, 2013).

24.    The sole basis for the Dismissal Motions was that the necessary corporate authority to file was absent, that GC did not have the requisite authority to sign the Petitions on behalf of the Debtors and that the lack of authority to file is an independent ground for

dismissal.  As already stated above, the T. Klein had given his consent to Mr. Ringel to take

steps to protect the Property, and as such, must not be allowed to withdraw it now as a

litigation tactic.  Most tellingly, the Debtors note that the Dismissal Motion does not set forth

how the filings are detrimental in any manner to the Debtors and/or their estates, nor do they

address the consequences of dismissal.  Debtors submit that this Court must determine

whether dismissal is in the best interests of the Debtors, their creditors and their estates

before deciding the Dismissal Motion.

25.     Section 1112(b) does not contain an exhaustive list of for cause; however, the

"for cause" is premised upon the best interest of the creditors and the estates.  The Dismissal

Motion is devoid of any discussion on how dismissal would benefit the creditors.  It is

submitted that the dismissal of these Chapter 11 cases would not be in the best interests of the

creditors and the estates.  If the cases were dismissed, the UCC Sale would be re-noticed, and

the Mezz Lender, if successful, will take control of the Property and the Debtors would lose

their substantial equity.

26.     Debtors submit that it is also within this Court's inherent equitable powers to

make a determination that the bankruptcy filings were properly authorized based upon the

preponderance of evidence which will have to be presented at a proper trial before this Court.

 "The determination as to whether to honor corporate formalities is an equitable one, and the

courts should not sanction a perversion of the privilege to do business in a corporate forum."

*In re Source Enterprises, Inc.,* 392 B.R. 541, 554(Bankr. S.D.N.Y. 2008).  (Further citations

omitted).  In the cases following this line of reasoning where by-laws required a 100%

{00682637.DOC:3 }682637

unanimous vote by shareholders to approve corporate actions, one of the shareholders sought

the dismissal of the case for lack of jurisdiction, maintaining that the petition was not filed

with requisite corporate authority, Judge Brozman noted that the movant had disingenuously

ignored corporate formalities when it came to his actions, but only sought to hold the other

shareholders accountable to the same corporate formalities that he had ignored, *i.e.*, failing to

get their written consent to the filing of a petition.  The Court found this dual standard

untenable.  Accordingly, the Court found in *American Globus Corp.*, that the facts presented

"dismissal of a bankruptcy proceeding for non-compliance with corporate by-laws and state

laws upon the filing of a stockholder who holds what would otherwise be a preferential

transfer, would be unjustified in both law and equity." *American Globus*, 195 B.R. 263, 266

(Bank. S.D.N.Y. 1996).

27.    Similarly, in these cases, it is submitted that the Original Members have not

always adhered to corporate authority when acting, but more importantly, when they tried to

under the circumstances where the emergency filing of these cases was necessary to avoid the

loss of the Property because of the UCC Sale, the Debtors believe that this Court should

exercise its equitable powers, based upon the preponderance of evidence and find that there

was the requisite corporate authority to file and that the filing of these cases was a proper

exercise of the business judgment by the Debtors.

28.    Although loathe to raise this issue, there is a significant issue that this Court

must address before proceeding with this matter.  The Kleins are represented by the firm of

Sills, Cummis & Gross P.C. ("Sills") in these cases, a firm that has a direct conflict of

interest and whose representation of the Kleins would be an express violation of Rule 1.6 and 1.9 of the Rules of Professional Conduct.  As was noted in a letter from Morrison Cohen LLP, counsel to Mr. Ringel, dated June 16, 2014, Sills was advised of this actual conflict but chose to proceed and filed the Dismissal Motion on June 18, 2014.  The Debtors submit that this actual conflict is an impediment to this matter proceeding, and believe that the Sills firm must be disqualified from representing the Kleins in these cases, and appropriate sanctions must be fixed for the Kleins for having directed Sills to proceed after this actual conflict was brought to their attention before the Dismissal Motion was filed. Annexed hereto as Exhibit B is the June 16, 2014 letter and a sample of some of the invoices for Sills' representation of the Debtors and Mr. Ringel that should prohibit their representation of the Kleins in these cases.

## **CONCLUSION**

29.    Debtors submit that the Dismissal Motion is without merit, that Mr. Ringel had the apparent consent for all of the actions taken to protect the Property, and that the Kleins should be equitably estopped from denying they consented to the filings.  Until this Court is presented with all of the facts, including hearing live testimony as to the circumstances of the filings, where this Court will be able to examine the evidence, it is respectfully submitted that the Dismissal Motion cannot be granted.

30.    Accordingly, Debtors submit that not only is the Dismissal Motion procedurally defective on numerous grounds, but is legally and factually devoid of merit. Controlling law and equitable principles as well as in the best interests of the Debtors, all

{00682637.DOC:3 }682637

creditors and the estates, requires that this Court make its own independent determination.

Debtors submit that the Court should hold evidentiary hearings to determine whether the

Debtors exercised their business judgment properly, and if dismissal is in the best interest of

their estates.

**WHEREFORE**, the Debtors respectfully request that the Dismissal Motion be denied

in its entirety, and that this Court grant Debtors such other and further relief as seems just,

proper and equitable.

**Dated:** New York, New York
June 29, 2014

> **ROBINSON BROG LEINWAND GREENE**
> **GENOVESE & GLUCK P.C.**
> *Proposed Attorneys for the Debtors and Debtors*
> *in Possession*
> 875 Third Avenue, 9th Floor
> New York, New York 10022
> Telephone No.: 212-603-6300
>
>
> By:/S/A. Mitchell Greene_____
> **A. Mitchell Greene, Esq.**

{00682637.DOC;3 }682637