ROBINSON BROG LEINWAND GREENE
 GENOVESE & GLUCK P.C.
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone No.: 212-603-6300
**A. Mitchell Greene, Esq.**
*Proposed Attorneys for the Debtors and Debtors*
*in Possession*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICTOF NEW YORK
-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **AC I INV MANAHAWKIN LLC,** | Case No. 14-22791 (RDD) |
| Debtor. | |

-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **AC I MANAHAWKIN MEZZ LLC,** | Case No. 14-22792 (RDD) |
| Debtor. | |

-------------------------------------------------------------X

| | |
|---|---|
| In re: | Chapter 11 |
| **AC I MANAHAWKIN LLC,** | Case No. 14-22793 (RDD) |
| Debtor. | |

-------------------------------------------------------------X

**DECLARATION OF BENJAMIN RINGEL IN SUPPORT OF DEBTORS'
OPPOSITION TO MOTIONS OF TIBOR KLEIN AND GERSHON KLEIN
SEEKING AN ORDER DISMISSING CHAPTER 11 BANKRUPTCY CASES**

**BENJAMIN RINGEL**, declares as follows:

1. I am one of the members of **AC Realty Equity Fund I, LLC** ("AC Realty"), the majority owner of **AC 1 INV Manahawkin LLC** ("INV"), which is the 100% owner of **AC I Manahawkin Mezz LLC** ("Mezz"), which in turn is the 100% owner of **AC I Manahawkin LLC** ("LLC" and collectively with INV and Mezz, hereinafter, the "Debtors").

{00682688.DOC;3 }682688

2. I have knowledge of the facts set forth herein, and if called as a witness, I could and would testify to the matters stated herein.

3. I submit this Declaration in support of Debtors' Opposition to the Motions of **Tibor Klein and Gershon Klein** seeking the dismissal ("Dismissal Motion") of the Debtors' Chapter 11 cases.

4. In the Dismissal Motion, the Kleins assert that the Debtors' bankruptcies were filed without the requisite written or unanimous consent of the members to authorize the filing for Chapter 11 bankruptcies for these three (3) Debtors. The Dismissal Motion further states that because of the filing by the Debtors of their Chapter 11 cases, the Kleins could be potentially harmed, although not actually harmed, since the filings would cause their guaranty of the senior debt to spring into effect. This should not outweigh the real harm to the Debtors' estates absent the filing

5. Contrary to the Kleins' assertions otherwise in the Dismissal Motion and supporting documents, the bankruptcies were made upon what I believed was the "apparent consent/authorization" of all of the members. I have been in communications with Tibor Klein ("T. Klein") at least three times prior to the filing to discuss the necessary and appropriate means to prevent the UCC Sale of the interests in Mezz, and thus the loss of the Property. T. Klein said that I should do whatever is necessary and that he would speak to his son, especially since he knew that Gershon and I have not spoken except for twice at a meeting, where T. Klein was also there..

6. Various different strategies were discussed, and it was first decided that we would utilize the Debtors' pre-petition counsel to go to court to try to seek a TRO of the UCC Sale based upon, among other things, that the sale was scheduled during the Jewish

Holiday Shavuot. I believe that all the members were in agreement with this strategy. At that time, I also discussed with T. Klein the possibility that if this first attempt was unsuccessful, that we might need to take other steps, including the possibility of filing of Chapter 11 bankruptcies for the Debtors.

7. In this regard, I consulted with a financial advisor who is familiar with distressed properties, and the Chapter 11 bankruptcy process, **GC Realty Advisors LLC** ("GC") and its principal, **David Goldwasser**. Mr. Goldwasser has vast expertise with distressed properties and the bankruptcy process.

8. On Monday, June 2, 2014 the request for a TRO was denied.

9. Right after the hearing, I had discussions with T. Klein regarding the retention of Mr. Goldwasser, who I met in Israel two weeks earlier to fight with RCG and save the equity in the Property. He did not express any objection to this, and as a matter of fact as it appeared to me, supported the decision to take any and all necessary steps to protect the Property.

10. We agreed that the filing for Chapter 11 bankruptcy would provide the Debtors with the sufficient breathing room to operate and generate revenue and potentially re-finance the secured obligations without the fear of losing the Property.

11. In furtherance of my discussions with T. Klein, and in consultation with GC, the appropriate documents were drawn up for the transfer of certain of the membership interests in AC Realty, the appointment of GC as managing member of INV and the manager of Mezz and LLC, along with the necessary authority to file the Chapter 11 cases. Documents were drawn up by counsel and emailed to me and T. Klein by GC. Those documents were received on Tuesday, June 3rd.

12. T. Klein advised me that unless he received the documents prior to the Holiday, he would not be able to look at them. The documents were sent around 6:25 p.m. on June 3. However, the documents would have only effectuated our understanding. Accordingly, it was clear to me that he had given me consent to file the bankruptcies in order to preserve the Property.

13. I executed the documents that I needed to in order to appoint GC as a member of AC Realty and then assisted in the execution of all of the necessary and appropriate documents to have the Chapter 11 bankruptcy petitions filed on June 4, 2014.

14. At or about the time of filing, proposed bankruptcy counsel had discussions with the Mezz lender, and had reached an agreement in principle for a standstill agreement to allow for the Debtors to re-finance the Mezz loan. This agreement would not have been possible but for the bankruptcy filings, as the Mezz lender would have taken over the interests and therefore, the Property, absent same.

15. In the Dismissal Motion, the Kleins completely ignored the fact that the Debtors have significant equity and other creditors, and that the bankruptcies preserve the value of the Property and the equity in same for the benefit of all of the creditors rather than just their personal interests. Debtors have not yet filed their Schedules, but preliminarily, the Debtors have debts in excess of **$39,000,000.00.**

16. Given sufficient time to re-finance the Mezz obligations and to work out a consensual agreement with the senior Lienholder on the Property, the Debtors are confident that they could successfully reorganize and preserve the equity in the Property that would have been lost if the UCC Sale occurred, absent the bankruptcies. Based upon the apparent authority granted to me to take the necessary steps to protect the Property and my reliance

upon that authority, the Kleins should be prohibited from arguing lack of authority after the fact, especially since the bankruptcies are in the best interests of the Debtors and their estates.

17. Relying upon my conversations with T. Klein wherein it was understood that I was going to take whatever actions necessary to file bankruptcy petitions, I retained counsel, transferred membership interests and arranged with GC for the filing of the bankruptcy petitions.

18. Since I was led to believe that I would received the signed documents from the Kleins, I was shocked and dismayed when more than one week after the bankruptcy filings, proposed counsel to the Debtor received a letter from Sills Cummis & Gross, P.C., so-called counsel to the Kleins, requesting that we immediately withdraw the Petitions. What was most shocking was that the Kleins allege they had not authorized the filings, which was in direct contravention to our discussions and agreement in and after Court hearing on June 2, 2014 when the TRO was denied, and further, that they were using Sills Cummis & Gross, P.C., a firm that has represented me and had represented the Debtors in prior matters, including matters pertaining to the acquisition of the Property.

**Dated:** New York, New York
        June   , 2014

                                                    /s/ Benjamin Ringel
                                                  **BENJAMIN RINGEL**