**ROBINSON BROG LEINWAND GREENE
GENOVESE & GLUCK P.C.**
875 Third Avenue, 9th Floor
New York, New York 10022
Telephone No.: 212-603-6300
**A. Mitchell Greene**
Proposed Attorneys for the Debtor and Debtor in Possession

UNITED STATES BANKRUTPCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

|  |  |
|---|---|
| In re: | Chapter 11 |
| **AC I INV MANAHAWKIN LLC,**<br>**AC I MANAHAWKIN MEZZ LLC, and**<br>**AC I MANAHAWKIN LLC**, | Case No.: 14-22791 through<br>            14-22793 (RDD)<br><br>(Jointly Administered) |
| Debtors. |  |

-----------------------------------------------------------X

**DEBTOR'S MOTION FOR ENTRY OF ORDER
AUTHORIZING DEBTOR'S USE OF CASH
COLLATERAL AND FOR RELATED RELIEF**

TO:   THE HONORABLE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE:

   **AC I Manahawkin LLC**, as debtor and debtor in possession (the "Debtor"), by its proposed attorneys, **Robinson Brog Leinwand Greene Genovese & Gluck P.C.**, pursuant to §§ 105, 361, 362, 363, 507 and 552 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeks the entry of an interim order in substantially the form annexed hereto as Exhibit B (the "Interim Order") (A) authorizing the Debtor to (i) use cash collateral as that term is defined in §363(a) of the Bankruptcy Code (the "Cash Collateral")

1

686661

in accordance with the Budget set forth as Exhibit A annexed hereto, and (ii) provide adequate protection to the Lender (defined below), (B) scheduling a final hearing on the Debtor's use of cash collateral, and (C) such other and further relief as is appropriate (the "Motion"). In support thereof, the Debtor states as follows:

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b).

2. Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

3. The statutory predicates for the relief requested herein are Sections 363 and 506 of the Bankruptcy Code.

## BACKGROUND AND SUMMARY OF RELIEF REQUESTED

4. On June 4, 2014 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On the same date, **AC 1 Manahawkin Mezz LLC** (" Manahawkin Mezz") and **AC 1 INV Manahawkin LLC** ("Manahawkin Inv") filed voluntary petitions under chapter 11 of the Bankruptcy Code.[1] Manahawkin Inv owns 100% of Manahawkin Mezz, which in turn owns 100% of the Debtor.[2]

5. The Debtor is operating its business and managing its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. As of the filing of this motion, no trustee, examiner or committee has been appointed. However, a motion to dismiss this case has been filed by Tibor and Gershon Klein (the "**Motion to Dismiss**"). *See, e.g.*, D.I. No. 11. Bankruptcy Case No. 14-22791 and the related pleadings.

---

[1] For the avoidance of doubt, Manahawkin Mezz and Manahawkin Inv are not seeking authority to use and shall not authorized to use the Lender's Cash collateral.

[2] Upon information and belief, Tibor Klein and Gershon Klein collectively have a 47.5% interest in Manahawkin Inv., AC Retail Equity Fund I LLC ("**AC Retail Equity**") has a 20% interest in Manahawkin Inv., and GC Realty Advisors LLC the remaining 32.5% in interests.

2

6.      The Debtor owns and operates a shopping mall known as Manahawkin Commons, which sits on a 48 acre site located in Manahawkin, New Jersey (the "Property"). The Property currently has TJ Maxx, Staples, K-Mart, Pier One, Regal Cinema and Michaels as anchor tenants.

7.      Mortgage Loan. On or around February 3, 2011, RCG LV Debt IV Non-REIT Assets Holdings, LLC, as Lender ("**Original Lender**") made a mortgage loan (the "**Mortgage Loan**") to the Debtor. The Mortgage Loan was made pursuant to the Loan Agreement, dated February 3, 2011 (as assigned, amended, supplemented or otherwise modified from time to time, including the First Amendment to Loan Agreement and Other Loan Documents, dated May 27, 2011), the "**Mortgage Loan Agreement**"). The Mortgage Loan is further evidenced by the Promissory Note, dated February 3, 2011, in the original principal amount of $36,630,000.00 (as assigned, amended, supplemented or otherwise modified from time to time, including the Amended and Restated Promissory Note, dated May 27, 2011, in the principal amount of $31,991,789.35), the "**Mortgage Loan Note**"). The Loan Documents[3] were assigned to and are now held by Deutsche Bank Trust Company Americas, as Trustee for the Registered Holders of the Wells Fargo Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2011-C3 ("**Lender**"). Rialto Capital Advisors, L LC ("Rialto") is the Special

---

[3] The term "**Loan Documents**" shall mean and include, without duplication: (a) the Mortgage Loan Agreement; (b) the Mortgage Loan Note; (c) the Mortgage and Security Agreement, dated February 3, 2011 (the "**Security Instrument**"); (d) the Lockbox-Clearing Account Control Agreement, dated January 2012 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time); (e) the Conditional Assignment of Management Agreement, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time); (f) the Environmental Indemnity Agreement, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time); (g) the Assignment of Leases and Rents, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time) (the "**AL&R**"); (h) the Intercreditor Agreement between Original Lender and RCG LV Debt Non-REIT Assets Holdings, LLC, as Mezzanine Lender, dated February 3, 2011; (i) any UCC financial statements filed by Lender to perfect its interest in any collateral of the Debtor (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time); and (j) all other documents executed and/or delivered in connection with the Mortgage Loan, including, without limitation, the Guaranty of Recourse Obligations of Borrower, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time).

3

686661

Servicer for the Lender under the Pooling and Servicing Agreement, dated as of June 1, 2011 by and among Wells Fargo Commercial Mortgage Securities, Inc., as depositor, Wells Fargo Bank, National Association, as master servicer, Midland Loan Services, a Division of PNC Bank, National Association, as special servicer, Pentalpha Surveillance LLC, as trust advisor, Wells Fargo Bank, National Association, as certificate administrator, as tax administrator and as custodian, and Deutsche Bank Trust Company Americas, as trustee (the "**Pooling Agreement**").

8. Mezz Loan. In addition to the above, on February 3, 2011, Manahawkin Mezz borrowed an additional $370,000 from the Original Lender in the form of a mezzanine loan (the "Mezzanine Loan").

9. Prepetition Indebtedness. On May 7, 2011, the loans were amended and restated. The principal amount of the Mortgage Loan was reduced to $31,991,789.35, and the principal amount of the Mezzanine Loan was increased to $4,941,009.59.

10. As of the Petition Date, the total principal amount outstanding on the Mortgage Loan under the Loan Documents, exclusive of interest, fees, expenses, attorneys' fees and special servicer fees, which continue to accrue in accordance with the Loan Documents, was $30,825,406.56 (the "**Prepetition Mortgage Debt**").

11. Security. Before the Petition Date, to secure all indebtedness arising under the Loan Documents, including the Prepetition Mortgage Debt, the Debtor granted to the Lender first priority liens and security interests (the "**Prepetition Liens**") on and in: (i) the Property; (ii) substantially all the Debtor's assets and properties, whether real or personal, tangible or intangible, and wherever located, and whether now or hereafter acquired; and (iii) all the cash, cash equivalents, proceeds, profits, products, offspring, rents, drafts, certificates, securities, and investment property, financial assets, instruments, and other property and the proceeds, products, distributions, dividends and/or substitutions thereon and thereof, including all property

4

686661

constituting Cash Collateral, in each case as more particularly described in the Security Instrument, the AL&R, and other Loan Documents. The items described in (i), (ii), and (iii) of the preceding sentence, as well as any other collateral or security as set forth or described in the Loan Documents are collectively referred to herein as the "**Collateral**").

12. The Mortgage Loan is secured by, among other things, (i) the Security Agreement, (ii) the AL&R, (iii) a Lockbox-Clearing Account Control Agreement and (iv) certain guaranties.

## THE DEBTOR'S IMMEDIATE NEED TO USE CASH COLLATERAL

13. The Debtor anticipates revenues over the next thirty days of approximately $322,000, but has very little cash, all of which is encumbered by the Lender's security interest and the Prepetition Liens.

14. Without the use of the Cash Collateral in which the Lender has an interest, the Debtor cannot mainatin its business. As set forth in detail in the attached Budget, built into the Debtor's immediate need for use of cash collateral is the requirement to pay its ongoing operating expenses, including, among other things, payroll, maintenance, and utilities.

15. Based on the foregoing, it is evident that the consequences of leaving the Debtor without access to its cash on hand will have a material adverse effect on the Debtor's estate, its creditors and its ability to successfully reorganize its financial affairs.

16. Subject only to the term of the Interim Order, the Lender will consent to the Debtor's use of Cash Collateral for the interim period.

## CASH COLLATERAL

17. The Debtor has prepared a proposed Budget covering the sixty (60) day period following the commencement of the case. Based on that Budget, it has insufficient funds to pay

5

686661

certain creditors on an ongoing basis without either (i) the use of the Cash Collateral based on the proposed budget (Exhibit A), or (ii) AC Retail Equity continuing to make payments to certain creditors on the Debtor's behalf.

18. For the period set forth in the Interim Order, Lender and the Debtor have agreed to allow the Debtor to pay the sums set forth in the Budget with a variance of no more than five (5%) percent on any one line item. The items in the Budget are only those expenditures which are necessary to maintain and operate the business during the Chapter 11 proceeding.

19. During this time, provided the Motion to Dismiss is not granted, the Debtor is contemplating whether to sell the Property for an amount in excess of the total amount owed on the loans or the refinancing of the obligations.

## ADEQUATE PROTECTION

20. Lender has alleged that it has a validly perfected security interests and liens in all of the Debtor's assets, which are subject to certain challenge rights as set forth in the Interim Order, Debtor has agreed to provide Lender with adequate protection in the form of (i) first priority post-petition security interests and liens (the "**Adequate Protection Liens**") to secure Lender's Prepetition Mortgage Debt to the extent of and equal to any aggregate diminution in the value of the Cash Collateral or Collateral (whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, use or disposition of the Collateral or Cash Collateral, including physical deterioration, consumption, use, shrinkage, disposition, or decline in market value); and (ii) as provided for in the Budget, a monthly payment to Rialto, on behalf of Lender, of current amounts under the Loan plus the amount necessary to fund the Debtor's tax and other escrows and to reimburse Rialto for the post-petition fees and costs incurred in connection with this Chapter 11 case (the "**Adequate Protection Payments**"). Rialto, on behalf

6

686661

of Lender, shall be entitled and authorized, but not obligated, to pay the Debtor's taxes from amounts that have accumulated in the Debtor's tax reserves as and when they become due and owing.  The Adequate Protection Liens shall attach to all right, title and interest of the Debtor in, to and under all present and after acquired property and assets of the Debtor of any kind or nature whatsoever, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, including, without limitation, all cash and Cash Collateral of the Debtor (whether maintained with Rialto, the Lender, or any other financial institution) and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivables, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery, equipment, patents, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and tort claims, and any and all of the proceeds, products, offspring, rents and profits thereof, rights under letters of credit, and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired. Notwithstanding the above, the Adequate Protection Liens shall (a) be junior to any existing valid senior enforceable and unavoidable prior perfected security interests and liens, (b) not attach to the proceeds of claims or causes of action arising under Sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (collectively, the "**Avoidance Actions**"), and (c) shall be subject to the Carve Out (as defined below).

21. In accordance with Local Rule 4001-2, the following are the terms of use of cash collateral:

> a. the amount of Cash Collateral requested is as more fully set forth in the Budget annexed as Exhibit A;

7

 b. The Debtor is authorized to use Cash Collateral from the Petition Date through the date following an Event of Default (defined below) (the "**Termination Date**") solely and strictly in accordance with the Budget. The Debtor's actual cash disbursements shall not exceed the total amount for such period by more than 5% (on a line item basis).

 c. Limitation on Cash Collateral. The Debtor shall not use Cash Collateral to pay (i) any expenses not expressly set forth in the Budget, regardless of whether such items are similar to the expense categories in the Budget, unless such expenses is approved in writing by Rialto in its sole discretion; (ii) any obligations or debts arising before the Petition Date (unless otherwise permitted by the Budget or ordered by the Court); or (iii) any fees or expenses of any party incurred in connection with (a) the filing and prosecution of any challenge to the validity, amount, extent, perfection, priority or enforceability of the Lender's Prepetition Liens, Prepetition Mortgage Debt, or the Loan Documents, (b) assert, commence, or prosecute any avoidance actions against the Lender or Rialto, or (c) permit the Debtor to pay for any services rendered by the professionals retained by the Debtor in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would otherwise be prohibited pursuant to this paragraph (collectively, the "**Prohibited Expenses**").

 d. Committee's Investigation Right. A committee (if appointed) has sixty (6) days from entry of the Interim Order to commence an adversary proceeding to challenge the Prepetition Liens, the Prepetition Mortgage Debt, the Loan Documents, or any other claims as to Lender.

 e. Termination of Use of Cash Collateral. Absent further Court order or Rialto's consent, the Debtor's authority to use Cash Collateral, pursuant to the Interim Order, shall expire upon the earlier of: (i) the date that is forty-five (45) days after the date of entry of the Interim Order unless the Final Order shall have been entered on or prior to such date following a hearing (the "**Final Hearing**"); (ii) the conversion of the Debtor's case to a case under Chapter 7 or dismissal of Debtor's case; (iii) the use of Cash Collateral for any Prohibited Expenses; (iv) the appointment of a trustee or examiner; (v) the Debtor's failure to comply with the Budget; (vi) the Debtor's failure to comply with any provision of the Interim Order; (vii) subject to entry of the Final Order, without the Lender's consent, an order shall be sought by the Debtor or entered granting any other claim superpriority status or a lien equal or superior to the Prepetition Liens or the liens granted pursuant to the Interim Order; or (viii) the entry of any order reversing, staying, or amending the Interim Order or any motion or application brought by the Debtor seeking such relief without the Lender's

8

consent. Except as set forth in the Interim Order, the occurrence of any event in the preceding sentence shall be considered an event of default (the "**Event of Default**").

f.  Priority. The Loan Documents are valid, enforceable, binding agreements and obligations of the Debtor. The Prepetition Liens constitute valid, binding, enforceable, nonavoidable, and properly perfected first priority security interests and liens on and in the Collateral and are not and shall not be subject to avoidance, disallowance, disgorgement, reductions, setoff, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or any nature under the Bankruptcy Code or any other applicable law or regulation. The Prepetition Mortgage Debt, including, without limitation, all principal, interest, fees, expenses, and other amounts outstanding or owing, or which may become outstanding and owing, constitutes the legal, valid, binding, and outstanding obligation of the Debtor.

g.  Priority of Adequate Protection Liens. The Adequate Protection Liens shall be enforceable against the Debtor, its estate and any successors thereto. Except as provided in the Interim Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order entered in the Debtor's Chapter 11 case or any successor case, and shall be valid and enforceable against any trustee appointed in the Debtor's Chapter 11 case or any successor case, or upon the dismissal of the Debtor's Chapter 11 case or successor case. The Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code. Subject to the entry of the Final Order, the Adequate Protection Liens shall not be subject to Section 506(c) of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of the estates pursuant to Section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

h.  507(b) Superpriority Claim. To the extent the adequate protection provided in the Interim Order proves to be inadequate to protect Lender's interest in the Collateral and the Cash Collateral, but subject to the Carve Out, Lender shall have a priority claim to the fullest extent permitted under Section 507(b) for the aggregate diminution in the value of the Collateral resulting from Debtor's use of the Cash Collateral during the term of the Interim Order (the "**Superpriority Claim**").

i.  Carve Out. The Lender is agreeing, prior to any default under the Interim Order, a carve-out for: (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6); (i) any fees payable to the clerk of the Court (the "**UST/Clerk Fees**"); and (iii) the fees and expenses of professionals retained by the Debtor, including the professionals (if any) retained by the Committee

9

686661

appointed in the Debtor's bankruptcy case, retained pursuant to Section 327(a) of the Bankruptcy Code in an aggregate amount not to exceed $50,000 for all retained professionals. Notwithstanding the preceding sentence, if the Bankruptcy Court grants the Motion to Dismiss, the Carve Out may not be used to satisfy the fees and expenses of any counsel retained or proposed to be retained by the Debtor or any of the affiliated debtors. ;

j. <u>Waiver</u>. Provided (i) the Debtor does not commence an adversary proceeding to the contrary on or before the date that is forty-five (45) days after the entry of the Interim Order, the Debtor waives, discharges, and releases any right or claim that it may have to challenge any of the Prepetition Mortgage Debt, Prepetition Liens, and the validity or enforceability of the Loan Documents under the Bankruptcy Code or any other applicable law or regulation. Subject to the expiration of the Challenge Period set forth in the interim Order, any Committee or other party in interest will be barred from challenging the Prepetition Mortgage Debt, Prepetition Liens, and the validity or enforceability of the Loan Documents under the Bankruptcy Code or any other applicable law.

k. the Lender is not funding activities of the Debtor aside from granting use of cash collateral; and

l. there is no provision affecting the Debtor's ability to repay the amounts due Lender.

### **RELIEF REQUESTED**

22. The Debtor seeks the entry of the Interim Order (i) authorizing it to expend the sums set forth in the column labeled "Budget" on Exhibit "A" (subject to a 5% line item variance), and (ii) scheduling a final hearing on the Debtor's use of Cash Collateral.

23. Accordingly, pursuant to §§ 105, 361, 362, 363, 507, and 522 of the Bankruptcy Code and Rule 4001(b) of the Bankruptcy Rules, the Debtor seeks (i) the entry of the Interim Order authorizing the Debtor to use Cash Collateral and scheduling a final hearing to approve the final order (the "Final Order"), the form of which will be filed with the Court, and (ii) such other and further relief as is appropriate.

24. Absent the use of Cash Collateral to pay operating expenses, the Debtor submits that the value of the Proeprty and the Lender's collateral will decline. Moreover, the inability to

686661

make timely payment of post-petition services will erode, if not eliminate, the Debtor's ability to reorganize. The payment of the reasonable operating expenses listed on the Budget is therefore necessary to preserve the Debtor's estate and fund its reorganization. Accordingly, the Court should authorize the Debtor to use the Cash Collateral as provided for in the Interim Order.

### NOTICE

25. Bankruptcy Rule 4001(b)(2) provides that a court may not commence a final hearing with respect to a debtor's motion to use cash collateral until 14 days after service of the motion. However, if the motion so requests, Bankruptcy Rule 4001(b)(2) authorizes a Court to hold a preliminary hearing prior to the expiration of the 14 day period. **The Debtor does not anticipate that the Final Hearing will occur for forty-five (45)** days after the Interim Order is entered.

26. Pending such hearing, the Debtor is requesting that the Court grant it immediate authorization to pay expenses as set forth in the Budget, all of which are necessary - indeed critical – to avoid immediate and irreparable harm to the estate.

27. In accordance with Bankruptcy Rule 4001, the Debtor proposes to give notice of this Motion to the Office of the United States Trustee, counsel to the Lender, all other scheduled secured creditors and the Debtor's twenty largest unsecured creditors. Notice will also be provided to the Internal Revenue Service, any applicable state public utility commissions required to receive notice and parties that have filed a request for special notice with this Court under Bankruptcy Rule 2002. The Debtor intends to give notice by serving this motion by, together with the exhibits hereto, by first class mail.

686661

**WHEREFORE**, the Debtor seeks (i) the entry of the Interim Order authorizing the Debtor to use Cash Collateral and scheduling a Final Hearing, (ii) the entry of the Final Order, authorizing the Debtor to use Cash Collateral, and (iii) such other and further relief as may be just and proper.

**DATED:** July 24, 2014

        ROBINSON BROG LEINWAND
        GREENE GENOVESE & GLUCK, P.C.

By:   /s/ A. Mitchell Greene
       **A. Mitchell Greene**
       875 Third Ave, 9th Floor
       New York, NY  10022-0123
       Tel. No.:  212- 603-6300
       amg@robinsonbrog.com
       *Proposed Attorneys for Debtor*

686661