**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

| | : | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| AC I INV MANAHAWKIN LLC, | : | Case No.:    14-22791 through |
| AC I MANAHAWKIN MEZZ, LLC, and | : |                 14-22793 (RDD) |
| AC I MANHAWKIN, LLC | : | |
| | : | (Jointly Administered) |
|                  Debtors. | : | |
| | : | |

------------------------------------------------------------------x

## STIPULATED FINAL ORDER AUTHORIZING THE DEBTOR TO USE LENDER'S CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO THE LENDER PURSUANT TO 11 U.S.C. §§ 361, 362, AND 363

Upon the Motion for Entry of Order Authorizing Debtor's Use of Cash Collateral and Related Relief [D.I. 29] (the "**Motion**") filed by AC I Manahawkin LLC (the "**Debtor**"), seeking, among other things, an interim order (the "**Interim Order**") and a final order (the "**Final Order**") (i) granting Adequate Protection Payments, Adequate Protection Liens, and the Superpriority Claim (all as defined herein) to and for the benefit of Rialto Capital Advisors, LLC, solely in its capacity as Special Servicer for the Lender (as defined below) ("**Rialto**") for (a) the use of the Lender's Cash Collateral (defined below) and (b) any diminution in value of the Lender's Collateral or Cash Collateral (both defined below); and upon an interim hearing on the Motion having been held by this Court on July 29, 2014 (the "**Interim Hearing**"), after which the Court entered a Stipulated Interim Order (A) Authorizing the Debtor to (i) Use Lender's Cash Collateral and (ii) Provide Adequate Protection to Lender Pursuant to 11 U.S.C. §§ 361, 362, and 363 and (B) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) [D.I. 26] (the "**Interim Order**") authorizing the Debtor's use of Cash Collateral during the interim period (the "**Interim Period**"); and following due and appropriate notice of the Interim

{00693326.DOC;1 }

Order [*see* D.I. 37] and upon a final hearing to consider the Motion held by the Court on September 11, 2014 (the "**Final Hearing**"); and further, upon the consent of Rialto for use of the Lender's Cash Collateral solely upon the terms and for the period prescribed herein, and after due deliberation and consideration and sufficient cause appearing therefor,

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS:**

A.     <u>Commencement of Case</u>.  On June 4, 2014 (the "**Petition Date**"), the Debtor filed its voluntary petition under Chapter 11 of Title 11 of the United States Code (the "**Bankruptcy Code**").  The Debtor is currently operating its business and managing its affairs as a debtor in possession under Sections 1107(a) and 1108 of the Bankruptcy Code.[1]

B.     <u>Jurisdiction; Venue</u>.  This Court has subject matter jurisdiction over this case and the Motion pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334.  This proceeding is a core matter under 28 U.S.C. § 157(b)(2).

C.     <u>No Creditors' Committee</u>.  The United States Trustee (the "**U.S. Trustee**") has indicated an inability to appoint an official committee of unsecured creditors in the Debtor's bankruptcy case pursuant to Section 1102 of the Bankruptcy Code.  [D.I. 35].  To the extent the U.S. Trustee hereafter appoints an official committee of unsecured creditors in the Debtor's bankruptcy case pursuant to Section 1102 of the Bankruptcy Code Committee, such shall be referred to hereinafter as the "**Committee**". The U.S. Trustee has not appointed a trustee or examiner.

D.     <u>Good Cause Shown</u>.  Good cause has been shown for the entry of this Final Order.  The Debtor does not have sufficient available sources of working capital and financing to

---

[1]     Nothing herein shall constitute a finding that the Debtor is properly a debtor-in-possession or that its bankruptcy case was properly filed and is without prejudice to that certain Motion to Dismiss Case filed by Tibor and Gershon Klein (the "**Motion to Dismiss**").  *See, e.g.*, D.I. No. 11. Bankruptcy Case No. 14-22791 and the related pleadings.

carry on the operation of its business without use of Lender's Cash Collateral. Among other things, entry of this Final Order will minimize disruption of the Debtor's business and operations and will help preserve and maintain the going concern value of the Debtor and its estate.

E.    Notice.  Notice of the Final Hearing and the relief requested in the Motion has been given to: (i) the U.S. Trustee; (ii) the entities listed on the Consolidated List of Creditors Holding the 20 Largest Unsecured Claims filed pursuant to Bankruptcy Rule 1007(d); (iii) counsel to the Lender; (iv) the Internal Revenue Service; and (v) parties that have filed a request for special notice with this Court under Bankruptcy Rule 2002 (the "**Notice Parties**").  *See* D.I. 37.  The notice of the Preliminary Hearing complies with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002 and 4001(b), and Local Bankruptcy Rule 4001-2.

F.    Prepetition Capital Structure.  Without prejudice to the rights of non-debtor parties in interest as set forth in paragraph ten (10) below (and subject thereto), and further provided the Debtor does not commence an adversary proceeding to the contrary on or before (i) September 14, 2014 with respect to the Stipulations set forth in 1, 2, 3, 5, 6 (other than the portion of the second sentence following (b)) and 7 and (ii) October 10, 2014 with respect to the Stipulations set forth in 4 and the portion of the second sentence of 6 following (b)—after which these stipulations shall become binding on the Debtor—the Debtor, on behalf of itself and its affiliates, parents, members, shareholders, and managers hereby irrevocably stipulates, acknowledges, and agrees as follows:

    1.    Mortgaged Property.  The Debtor is the current owner of certain real property located in Manahawkin, Ocean County, New Jersey, more particularly described on Exhibit A to the Security Instrument (as defined below), including all additional land, improvements, easements, and fixtures which comprise an approximately 321,000 square foot shopping center (the "**Mortgaged Property**");

    2.    Mortgage Loan.  On or around February 3, 2011, RCG LV Debt IV Non-REIT Assets Holdings, LLC, as Lender ("**Original Lender**") made a mortgage loan (the

"**Mortgage Loan**") to the Debtor.  The Mortgage Loan was made pursuant to the Loan Agreement, dated February 3, 2011 (as assigned, amended, supplemented or otherwise modified from time to time, including the First Amendment to Loan Agreement and Other Loan Documents, dated May 27, 2011), the "**Mortgage Loan Agreement**").  The Mortgage Loan is further evidenced by the Promissory Note, dated February 3, 2011, in the original principal amount of $36,630,000.00 (as assigned, amended, supplemented or otherwise modified from time to time, including the Amended and Restated Promissory Note, dated May 27, 2011, in the principal amount of $31,991,789.35), the "**Mortgage Loan Note**").  The Loan Documents (defined below) were assigned to and are now held by Deutsche Bank Trust Company Americas, as Trustee for the Registered Holders of the Wells Fargo Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2011-C3 ("**Lender**").  Rialto is the Special Servicer for the Lender under the Pooling and Servicing Agreement, dated as of June 1, 2011 by and among Wells Fargo Commercial Mortgage Securities, Inc., as depositor, Wells Fargo Bank, National Association, as master servicer, Midland Loan Services, a Division of PNC Bank, National Association, as special servicer, Pentalpha Surveillance LLC, as trust advisor, Wells Fargo Bank, National Association, as certificate administrator, as tax administrator and as custodian, and Deutsche Bank Trust Company Americas, as trustee (the "**Pooling Agreement**").

3.  <u>Loan Documents</u>.  For purposes of this Final Order, the term "**Loan Documents**" shall mean and include, without duplication: (a) the Mortgage Loan Agreement; (b) the Mortgage Loan Note; (c) the Mortgage and Security Agreement, dated February 3, 2011 (the "**Security Instrument**"); (d) the Lockbox-Clearing Account Control Agreement, dated January 2012 (the "**LCACA**," as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time or replaced by that Deposit Account Control Agreement (Hard Lockbox) dated August [●], 2014 (the "**August 2014 DACA**"); (e) the Conditional Assignment of Management Agreement, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time); (f) the Environmental Indemnity Agreement, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time); (g) the Assignment of Leases and Rents, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time) (the "**AL&R**"); (h) the Intercreditor Agreement between Original Lender and RCG LV Debt Non-REIT Assets Holdings, LLC ("**RCG**"), as Mezzanine Lender, dated February 3, 2011; (i) any UCC financial statements filed by Lender to perfect its interest in any collateral of the Debtor (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time); and (j) all other documents executed and/or delivered in connection with the Mortgage Loan, including, without limitation, the Guaranty of Recourse Obligations of Borrower, dated February 3, 2011 (as assigned, amended, continued, renewed, supplemented or otherwise modified from time to time).

4.  <u>Prepetition Indebtedness</u>.  As of the Petition Date, the total principal amount outstanding under the Loan Documents, exclusive of interest, fees, expenses,

attorneys' fees and special servicer fees, which continue to accrue in accordance with the Loan Documents, was $30,825,406.56 (the "**Prepetition Mortgage Debt**").

5.    <u>Security</u>.   Before the Petition Date, to secure all indebtedness arising under the Loan Documents, including the Prepetition Mortgage Debt, the Debtor granted to the Lender first priority liens and security interests (the "**Prepetition Liens**") on and in: (i) the Mortgaged Property; (ii) substantially all the Debtor's assets and properties, whether real or personal, tangible or intangible, and wherever located, and whether now or hereafter acquired; and (iii) all the cash, cash equivalents, proceeds, profits, products, offspring, rents, drafts, certificates, securities, and investment property, financial assets, instruments, and other property and the proceeds, products, distributions, dividends and/or substitutions thereon and thereof, including all property constituting "cash collateral" as defined in Section 363 of the Bankruptcy Code (the "**Cash Collateral**"), in each case as more particularly described in the Security Instrument, the AL&R, and other Loan Documents.   The items described in (i), (ii), and (iii) of the preceding sentence, as well as any other collateral or security as set forth or described in the Loan Documents are collectively referred to herein as the "**Collateral**").

6.    <u>Priority</u>.   The Loan Documents are valid, enforceable, binding agreements and obligations of the Debtor.   The Prepetition Liens (a) constitute valid, binding, enforceable, nonavoidable, and properly perfected first priority security interests and liens on and in the Collateral and are not and (b) shall not be subject to avoidance, disallowance, disgorgement, reductions, setoff, recharacterization, subordination (whether equitable, contractual, or otherwise), counterclaims, cross-claims, defenses or any other challenges of any kind or any nature under the Bankruptcy Code or any other applicable law or regulation.   The Prepetition Mortgage Debt, including, without limitation, all principal, interest, fees, expenses, and other amounts outstanding or owing, or which may become outstanding and owing, constitutes the legal, valid, binding, and outstanding obligation of the Debtor.

7.    <u>Waiver</u>.   The Debtor hereby waives, discharges, and releases any right or claim that it may have to challenge any of the Prepetition Mortgage Debt, Prepetition Liens, and the validity or enforceability of the Loan Documents under the Bankruptcy Code or any other applicable law or regulation.

D.    <u>Good Faith</u>.   The Lender, acting through Rialto and its agents, and the Debtor have negotiated at arms' length and in good faith regarding the Debtor's use of Cash Collateral to fund the continued operations of the Debtor for the period through the Termination Date (as defined below).   Based on the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and the use of the Cash Collateral are fair and reasonable under the circumstances, reflect the Debtor's exercise of

prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  Entry of this Final Order is in the best interests of the Debtor and its estate.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    <u>Disposition</u>.  The Motion is granted on a final basis solely in accordance with the terms of this Final Order.  Any objections or reservations to the Motion that have not been withdrawn, waived, or settled are hereby denied and overruled.

2.    <u>Effect of Disposition</u>.  Notwithstanding any provision of the Bankruptcy Code or the Bankruptcy Rules to the contrary, this Final Order shall take effect immediately upon entry *nunc pro tunc* to the Petition Date and shall remain in effect until the occurrence and continuation of the Termination Date (as defined below).

3.    <u>Modifications</u>.  If any of the provisions of this Final Order are hereafter modified, vacated, reversed, or stayed by an order of the Court or another court, then such stay, modification, reversal, or vacatur shall not affect the validity, perfection, priority, allowability, or enforceability of any lien, security interest, claims, priority, payments, or adequate protection authorized for the benefit of Lender hereunder that is granted or attaches prior to the effective date of such stay, modification, reversal, or vacatur.  And any use of the Cash Collateral by the Debtor pursuant to this Final Order prior to the effective date of such modification, stay, reversal, or vacatur shall be governed in all respects by the original provisions of this Final Order.

4.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final Order, the Debtor is authorized, pursuant to Section 363(c)(2) of the Bankruptcy Code, to use Cash Collateral from the Petition Date through the Termination Date (as defined below)

solely and strictly in accordance with the budget attached hereto as <u>Exhibit A</u> ("**Budget**").  For the period set forth in the Budget or limited by this Final Order, the Debtor's actual cash disbursements for such period shall not exceed the total amount for such period by more than 5% (on a line item basis).  The Budget cannot be amended, supplemented or modified by Debtor without the express written consent of Rialto, which consent may be withheld by Rialto in its sole discretion.  Through the Termination Date (defined below), provided Rialto and the Debtor agree, each in their sole discretion, to amend, supplement or modify the Budget, including cash disbursements set forth therein, such amendment or modification must be in a written agreement. Following notice to the U.S. Trustee, any Committee, and the Notice Parties, the Debtor will be authorized to use Cash Collateral in such amended or modified amount without further Court order.

5.    <u>Limitations on Cash Collateral</u>.  Notwithstanding any term herein to the contrary, the Debtor shall not use Cash Collateral to pay (i) any expenses not expressly set forth in the Budget, regardless of whether such items are similar to the expense categories in the Budget, unless such expenses is approved in writing by Rialto in is sole discretion; (ii) any obligations or debts arising before the Petition Date (unless otherwise permitted by the Budget or ordered by the Court); or (iii) any fees or expenses of any party incurred for (a) the filing and prosecution of any challenge to the validity, amount, extent, perfection, priority or enforceability of the Lender's Prepetition Liens, Prepetition Mortgage Debt, or the Loan Documents, (b) assert, commence, or prosecute any avoidance actions against the Lender or Rialto, or (c) permit the Debtor to pay for any services rendered by the professionals retained by the Debtor in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense, or other contested matter, the purpose of which is to seek, or the

result of which would be to obtain, any order, judgment, determination, declaration, or similar relief that would otherwise be prohibited pursuant to this paragraph (collectively, the "**Prohibited Expenses**").

6.    <u>Termination of Use of Cash Collateral.</u>    Absent further Court order or Rialto's prior written consent, the Debtor's authority to use Cash Collateral, pursuant to this Final Order, shall expire upon the earlier of: (i) the Debtor's failure to comply with the Sale Milestones (as defined below); (ii) the conversion of the Debtor's case to a case under Chapter 7 or dismissal of Debtor's case; (iii) the Debtor's use of Cash Collateral for any Prohibited Expenses; (iv) the appointment of a trustee or examiner; (v) the Debtor's failure to comply with the Budget; (vi) the Debtor's failure to provide a supplemental/amended Budget to Rialto on or before the date that is thirty (30) days before the expiration of the existing Budget; (vii) the failure for there to be sufficient funds on deposit to pay Rialto the Budgeted Adequate Protection Payments for any other month later than the fifth (5th) day of such month unless otherwise waived by Rialto in its sole discretion; (viii) the failure to deposit rents generated from the Property into the Lockbox or to execute the August 2014 DACA;[2] (ix) the Debtor's failure to comply with any provision of this Final Order; (x) the Debtor's commencement of an adversary proceeding challenging the validity, amount, extent, perfection, priority or enforceability of the Lender's Prepetition Liens, Prepetition Mortgage Debt, or the Loan Documents; (xi) without the Lender's consent, an order shall be sought by the Debtor or entered granting any other claim superpriority status or a lien equal or superior to the Prepetition Liens or the liens granted pursuant to this Final Order; or (xii)  the entry of any order reversing, staying, or amending this Final Order or any motion or application brought by the Debtor seeking such relief without the Lender's consent.  Except as

---

[2]  "**Lockbox**" shall mean the lockbox account established pursuant to the LCACA, which was been or will be superseded by the lockbox account held at Wells Fargo and established pursuant to the August 2014 DACA.

set forth below, the occurrence of any event in the preceding sentence shall be considered an event of default (the "**Event of Default**").  For purposes of this Final Order, the date following the occurrence of an Event of Default shall be known as the "**Termination Date**."  For the avoidance of doubt, expenses actually incurred in accordance with the Budget prior to a Termination Date may be satisfied with Cash Collateral; provided, however, except as provided for by the Carve Out, no fees or expenses incurred after the Termination Date may be satisfied with Cash Collateral.

7.     <u>Sale Milestones</u>.  As a condition to the Lender's consent to Debtor's continued use of Cash Collateral under this Final Order, the Debtor shall comply with the following deadlines and milestones in connection with a sale of substantially all its assets (collectively, the "**Sale Milestones**"):[3]

> a.  On or before October 30, 2014, the Debtor shall have hired a broker, reasonably acceptable to Lender, to market and sell all or substantially all of its business assets as a going concern under section 363 of the Bankruptcy Code;
>
> b.  On or before December 15, 2014, the Debtor shall have filed with the Court a motion or a plan of reorganization that provides for the sale of the Property (the "**Sale Motion**"), in form and substance reasonably satisfactory to Lender, seeking approval of a section 363 sale process with respect to a sale of all or substantially all of its business assets as a going concern (the "**Sale**"), including approval of bid, auction, and assumption

---

[3]     To the extent applicable, the Sale Milestones and dates for court approval thereof are subject to the Court's calendar and availability and may be extended solely to the next available date available to the Court.

and assignment procedures, as well as the naming of any stalking horse
bidder;

c.  On or before January 15, 2015, the Debtor shall have: (i) obtained a final,
non-appealable Order of the Court approving the proposed bid, auction,
and assumption and assignment procedures; and (ii) received all qualified
bids, and, if two or more competing bidders are identified, the Debtor shall
have conducted an auction or, if any stalking horse bid is the only
qualified bid submitted by the bid deadline, the Debtor shall not hold the
auction; and

d.  On or before February 15, 2015, the Debtor shall have: (i) obtained a final,
non-appealable Order of the Court approving the Sale Motion and the sale
to the successful bidder, on such terms as may be reasonably acceptable to
Lender or that pays the Lender in full in cash at closing; and (ii) closed the
Sale to the successful bidder.[4]

Notwithstanding the dates set forth in a, b, c, and d above, Rialto shall have the right to
consent, in its sole distraction, to the extension of the Sale Milestones without further order
of this Court, except that they shall be required to file a notice with this Court and provide
notice of such to the Notice Parties setting forth the new Sale Milestones (a "Modification
Notice").  Provided a Notice Party objects to the Sale Milestones as modified by a
Modification Notice, it may file a written objection and request that a hearing be scheduled
on no less than five (5) business days' notice.  In addition, Debtor shall not be in default of

---

[4]      Nothing herein shall constitute the Court's prior approval of any Sale nor sales
procedures.

the Sale Milestones if it files a motion or plan of reorganization by December 15, 2014 that seeks to pay off Lender in full by December 15, 2014 and obtains a final order approving or confirming such by February 15, 2015.

8.      Reporting Requirements.  On Wednesday of each week, the Debtor shall provide the U.S. Trustee, Rialto, RCG and Acadia Realty Limited Partnership (the "Reporting Parties") with a written report showing (i) all cash, including Cash Collateral in its possession, custody, or control, including the sources thereof, (ii) any cash, including Cash Collateral expended through Wednesday of the prior week, (iii) a report showing all rent received, (iv) a report showing all accounts that the Debtor owns, controls, has access to, or where any amounts belonging or owing to the Debtor are deposited and copies of any and all statements or reports concerning those accounts, and (v) further information that Rialto reasonably requests upon reasonable notice to the Debtor's counsel.  Within five (5) business days after the end of each calendar month, Debtor shall provide the Reporting Parties with (i) a written variance report showing actual expenditures and receipts for each line item versus line items in the Budget and (ii) an updated rent roll that identifies each tenant and fully describes the rent owing by such tenant and the status of rental payment.  The Debtor shall also identify, track, and account for the proceeds of any Cash Collateral created after the Petition Date, which shall also subject to the Adequate Protection Liens (defined herein).

9.      Right to Inspect and Audit.  The Debtor shall permit each representative of Lender, including Rialto (through its officers, senior employees, or agents, including but not limited to professionals retained in connection with these cases) to inspect the Collateral during business hours upon reasonable advance notice. In addition, the Debtor shall allow each

representative to periodically inspect and audit the books, records, and account statements of the Debtor in order to confirm the Debtor's compliance with this Final Order.

10.    <u>Investigation Rights</u>.    The stipulations contained in Paragraph F (entitled Prepetition Capital Structure) above shall be without prejudice to the right of any non-Debtor party in interest or any Committee to seek to challenge the validity, priority, or enforceability of the Prepetition Liens in the Mortgaged Property, Collateral, or Cash Collateral.  Such parties shall have until October 14, 2014 (the "**Challenge Period**") to commence an adversary proceeding challenging the Prepetition Liens, the Prepetition Mortgage Debt, the Loan Documents, or any other claims as to Lender.  If no such action is timely filed, the (i) stipulations in Paragraph F hereof shall become final and binding on the Debtor and all parties in interest (including the U.S. Trustee) and (ii) the Prepetition Mortgage Debt and Lender's Prepetition Liens in the Mortgaged Property, Collateral, and Cash Collateral securing such debt shall be valid, perfected, non-avoidable, first priority secured debt and in full force and effect, not subject to any claims, counterclaims, setoffs, or defenses under the Bankruptcy Code or any other applicable law or regulation, except with respect to the value of the Collateral and the amount of any deficiency claim under Section 506(q) of the Bankruptcy Code, if any.

11.    <u>Adequate Protection</u>.    As adequate protection for the Debtor's use of Cash Collateral expended pursuant to the Final Order, Lender is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution by the Debtor, of mortgages, security agreements, pledge agreements, financing statements or other agreements), pursuant to 11 U.S.C. §§ 361(2) and 363(e): (i) first priority postpetition security interests and liens (the "**Adequate Protection Liens**") to secure Lender's Prepetition Mortgage Debt to the extent of and equal to any aggregate diminution in the value of the Cash Collateral or Collateral

(whether such diminution is a result of, arises from, or is attributable to, imposition of the automatic stay, use or disposition of the Collateral or Cash Collateral, including physical deterioration, consumption, use, shrinkage, disposition, or decline in market value); (ii) as provided for in the Budget, a monthly payment to Rialto on or before the fifth (5th) day of each month of current amounts under the Loan plus the amount necessary to fund the Debtor's tax and other escrowed payments and to reimburse Rialto for the postpetition fees and costs incurred in connection with this Chapter 11 case, which amounts shall be applied only to the Lender's allowed claim under § 506 of the Bankruptcy Code (the "**Adequate Protection Payments**"); and (iii) Rialto, on behalf of Lender, shall be entitled and authorized, but not obligated, to pay the Debtor's taxes from amounts that have accumulated in the Debtor's tax reserves as and when they become due and owing.  The Adequate Protection Liens shall attach to all right, title and interest of the Debtor in, to and under all present and after acquired property and assets of the Debtor of any kind or nature whatsoever, whether now owned or hereafter acquired, and all proceeds, rents, or profits thereof, including, without limitation, all cash and Cash Collateral of the Debtor (whether maintained with Rialto, the Lender, or any other financial institution) and any investment of such cash and Cash Collateral, goods, cash-in-advance deposits, contracts, causes of action, general intangibles, accounts receivables, and other rights to payment, whether arising before or after the Petition Date, chattel paper, documents, instruments, interests in leaseholds, real properties, plants, machinery, equipment, patents, copyrights, trademarks, trade names or other intellectual property, licenses, insurance proceeds, and tort claims, and any and all of the proceeds, products, offspring, rents and profits thereof, rights under letters of credit, and all other investment property, and the proceeds of all of the foregoing, whether now existing or hereafter acquired.  Notwithstanding the above, the Adequate Protection Liens shall (a) be

junior to any existing valid senior enforceable and unavoidable prior perfected security interests and liens, (b) not attach to any claims or causes of action arising under Sections 502(d), 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or the proceeds thereof (collectively, the "**Avoidance Actions**"), and (c) shall be subject to the Carve Out (as defined below).

12.    <u>Priority of Adequate Protection Liens</u>. The Adequate Protection Liens shall be enforceable against the Debtor, its estate, and any successors thereto, including without limitation, any trustee, examiner, or other estate representative appointed in the Debtor's Chapter 11 case, any other case involving the Debtor under the Bankruptcy Code, or any case under chapter 7 of the Bankruptcy Code upon the conversion of the Debtor's Chapter 11 case, or in any other proceedings superseding or related to any of the foregoing (collectively, a "**Successor Case**").  Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Debtor's Chapter 11 case or any Successor Case, and shall be valid and enforceable against any trustee appointed in the Debtor's Chapter 11 case or any Successor Case, or upon the dismissal of the Debtor's Chapter 11 case or Successor Case.  The Adequate Protection Liens shall not be subject to Sections 510, 549, or 550 of the Bankruptcy Code.  The Adequate Protection Liens shall not be subject to Section 506(c) of the Bankruptcy Code.  No lien or interest avoided and preserved for the benefit of the estates pursuant to Section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13.    <u>Perfection</u>.  The Adequate Protection Liens granted to Lender by this Final Order shall be perfected by operation of law upon execution and entry of this Final Order by the Court. The Lender shall not be required to take any action to validate or perfect such Adequate

Protection Liens.  Notwithstanding the foregoing, if the Lender chooses to file such documents, all such filings and recordings shall be deemed to have been filed or recorded as of the Petition Date.  Notwithstanding the foregoing, the Debtor is authorized and directed to execute and deliver promptly to Rialto all such financing statements, mortgages, notices and other documents as Rialto may reasonably request, including the August 2014 DACA, and Rialto may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instruments.

14.     507(b) Superpriority Claim.  To the extent the adequate protection provided herein proves to be inadequate to protect Lender's interest in the Collateral and the Cash Collateral, but subject to the Carve Out, Lender shall have a priority claim to the fullest extent permitted under Section 507(b) for the aggregate diminution in the value of the Collateral resulting from Debtor's use of the Cash Collateral during the term of the Final Order (the "**Superpriority Claim**"), provided, however, that the Superpriorty Claim shall not be paid from the proceeds of Avoidance Actions unless there are no other sources for payment of the Superpriority Claim from the Debtor's estate.

15.     Carve Out.  As used in this Final Order, the term "**Carve Out**" means: (i) amounts payable pursuant to 28 U.S.C. § 1930(a)(6) and 31 U.S.C. § 3717; (i)  any fees payable to the clerk of the Court (the "**UST/Clerk Fees**"); (iii) the fees and expenses of professionals retained by the Debtor retained pursuant to Section 327(a) of the Bankruptcy Code in an aggregate amount not to exceed $100,000 during the Interim Period for all retained professionals; and (iv) for expenses incurred in connection with the conversion of this case to Chapter 7 up to $5,000, in each case after the occurrence and during the continuance of an Event

of Default and in each case to the extent allowed by this Court.  Notwithstanding the preceding sentence, if the Bankruptcy Court grants the Motion to Dismiss, the Carve Out may not be used to satisfy the fees and expenses of any counsel retained or proposed to be retained by the Debtor or any of the affiliated debtors.

16.    Remedies.  Notwithstanding the automatic stay in Section 362 and without the necessity of any further order of the Court, immediately upon a Termination Date, the Debtor's authority to use, spend, or otherwise dispose of any further Cash Collateral, regardless of whether the Debtor has expended the entire amount set forth in the Budget, shall automatically terminate, unless or until the Debtor obtains the written consent of Rialto or the Court enters an order after notice and a hearing.  In addition, notwithstanding the automatic stay in Section 362 and without the necessity of any further order of the Court, immediately upon the occurrence of an Event of Default, Rialto may provide notice of the occurrence of an Event of Default (the "**Event of Default Notice**").  The Event of Default Notice shall be given by email or facsimile (or other electronic means) to the following parties: (i) counsel to the Debtor, (ii) counsel to any Committee, (iii) the Notice Parties, (iv) counsel to Mezz Lender, and (v) the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Event of Default Declaration Date**").  Five business days after delivery of the Event of Default Notice, which period shall constitute the Debtor's cure period, Rialto shall be permitted to exercise all remedies set forth herein and in the Loan Documents, as applicable, and as otherwise available at law against the Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under Sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the Collateral or any other rights and remedies granted to the Lender with respect thereto pursuant to

the Loan Documents or this Final Order, as applicable unless or until the Debtor obtains the

written consent of Rialto or the Court enters an Order after notice and a hearing.

17.    Section 506(c) Claims. Except with respect to the Carve Out, no costs or expenses

of administration which have been or may be incurred in the Debtor's Chapter 11 case at any

time shall be charged against the Lender or any of its claims or the Collateral pursuant to

Sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

18.    No Third Party Rights.  Except as explicitly provided for herein, this Final Order

does not create any rights for the benefit of any third party, creditor, equity holder or any direct,

indirect, or incidental beneficiary.

19.    No Marshaling/Application of Proceeds. Except as provided for in Paragraph 14

above, Rialto and Lender shall not be subject to the equitable doctrine of "marshaling" or any

other similar doctrine with respect to any of the Collateral, as the case may be, and proceeds

shall be received and applied in accordance with this Final Order notwithstanding any other

agreement or provision to the contrary.

20.    Section 552(b).  Rialto and Lender shall be entitled to all of the rights and benefits

of Section 552(b) of the Bankruptcy Code, and the "equities of the case" exception under Section

552(b) of the Bankruptcy Code shall not apply to Rialto or Lender with respect to proceeds,

product, offspring or profits of any of the Collateral.

21.    Rights Preserved.  Notwithstanding anything herein to the contrary, the entry of

this Final Order is without prejudice to, and does not constitute a waiver of, expressly or

implicitly: (a) the Lender's right to seek any other or supplemental relief in respect of the Debtor,

including the right to seek additional adequate protection in connection with the Final Order;

(b) any of the rights of Lender under the Bankruptcy Code or under non-bankruptcy law,

including, without limitation, the right to (i) request modification of the automatic stay of Section 362 of the Bankruptcy Code, (ii) request dismissal of the Debtor's Chapter 11 case or a Successor Case, conversion of the Debtor's Chapter 11 case to a case under chapter 7, or appointment of a chapter 11 trustee or examiner, or (iii) propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; (c) Rialto's or Lender's right to object to any request by Debtor for the incurrence of financing pursuant to Sections 363 or 364 of the Bankruptcy Code, or (d) Rialto's or Lender's other rights under the Loan Documents; including, without limitation, the right to default interest, special servicing fees, and the right to obtain reimbursement of all expenses incurred.

22.    <u>Section 507(b) Reservation</u>.    Nothing herein, other than the Carve Out, shall impair or modify the application of Section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to Lender hereunder is insufficient to compensate for any diminution in value of the Lender's interests in the Collateral during the Debtor's Chapter 11 case or any Successor Case.  Nothing contained herein shall be deemed a finding by the Court, or an acknowledgement by the Lender, that the adequate protection granted herein does in fact adequately protect the Lender against any diminution in value of its interest in the Collateral (including Cash Collateral).

23.    <u>No Waiver by Failure to Seek Relief</u>.    The failure of Rialto or Lender to seek relief or otherwise exercise its rights and remedies under this Final Order or applicable law, as the case may be, shall not constitute a waiver of any rights hereunder, thereunder, or otherwise of Lender.

24.    <u>Proofs of Claim</u>.    Rialto and Lender will not be required to file a proof of claim in the Debtor's Chapter 11 case or a Successor Case for its claims to be allowed, and the Debtor's

stipulations herein shall be deemed to constitute a timely filed proof of claim.   Any Order

entered by the Court in relation to the establishment of a bar date for any claim (including,

without limitation, administrative claims) in the Debtor's Chapter 11 case or a Successor Case

shall not apply to Rialto, on behalf of the Lender.

<b><u>MISCELLANEOUS</u></b>

25.    <u>Amendment</u>.   The Debtor and Rialto may amend or waive any provision of this

Final Order if such amendment or waiver, in the Debtor's and the Lender's judgment together, is

immaterial and nonprejudicial to the rights of third parties.   The Debtor and Rialto may amend

the Budget from time to time in which case such amended Budget shall be deemed the Budget

for purposes of this Final Order.   Except as otherwise provided herein, no waiver, modification,

or amendment of any provision hereof shall be effective unless set forth in writing, signed by the

Debtor and Rialto.

26.    <u>Credit Bidding.</u>   Any plan or motion seeking to sell substantially all the Collateral

shall provide for and allow credit bidding by the Lender in the amount of its allowed claim,

whether under: (a) Section 363(k) or in the case of a sale under Section 363(b) or (b) a plan

provision consistent with the language of Section 363(k), including, without limitation, Section

1129(b)(2)(a)(iii), subject in each case to such sections of the Bankruptcy Code.

27.    <u>No Waiver; Survival.</u>   This Final Order shall not be construed in any way as a

waiver or relinquishment of any rights that the Lender may have to bring or to be heard on any

matter brought before this Court.   Subject to the express reservations set forth in this Final Order,

the Debtor's stipulations set forth in this Final Order shall survive the Termination Date and/or

entry of any order: (a) confirming any plan of reorganization in the Debtor's Chapter 11 Case

unless and to the extent that the applicable confirmation order or confirmed plan of

reorganization expressly provides otherwise and such confirmation order has become a final order and the effective date has occurred under such confirmed plan of reorganization; (b) converting the Debtor's Chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing the Debtor's Chapter 11 case or any Successor Cases; or (d) pursuant to which this Court abstains from hearing the Debtor's Chapter 11 case or Successor Cases.

28.    Modification of Automatic Stay.    The automatic stay under Bankruptcy Code Section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to: (a) permit the Debtor to grant the Adequate Protection Liens and the Superpriority Claim; (b) permit the Debtor to perform such acts as Lender may request in its sole discretion to assure the perfection and priority of the liens granted herein; and (c) authorize the Debtor to pay, and Lender to retain and apply, payments made in accordance with the terms of this Final Order.

29.    This Final Order is hereby deemed effective immediately pursuant to Bankruptcy Rule 6004(h) and shall be valid and binding on all parties in interest.

30.    This Final Order constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date upon the entry thereof.

31.    Entry of this Final Order shall be binding on all parties in interest, the Debtor, and any subsequently appointed committee, chapter 11 trustee, chapter 7 trustee, receiver or examiner trustee, or examiner.

32.    To the extent any provision of this Final Order conflicts with the Motion, the

Final Order shall control.

Dated: September 19, 2014
        White Plains, New York

                                        _/s/Robert D. Drain_____
                                        United States Bankruptcy Judge

**EXHIBIT A**

**[BUDGET]**