# EXHIBIT 1

# Bidding Procedures

**ROBINSON BROG LEINWAND GREENE**
 **GENOVESE & GLUCK P.C.**
875 Third Avenue
New York, New York 10022
A. Mitchell Greene
*Attorneys for the Debtor and Debtor in Possession*
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X

In re:                                                                                  Chapter 11

**AC I INV MANAHAWKIN LLC,**                          Case No.:  14-22791 through
**AC I MANAHAWKIN MEZZ LLC, and**                                14-22793 (RDD)
**AC I MANAHAWKIN LLC,**                             (Jointly Administered)

                               Debtors.
---------------------------------------------------------X

## BIDDING PROCEDURES

Set forth below are the bidding procedures (the "Bidding Procedures") that shall govern the sale of the Debtor's Property in the above-captioned case.

**I.**         **Assets to be Sold:**  The assets to be sold consists of the Debtor's interests in the Property otherwise known as Manahawkin Commons, a shopping center located in Manahawkin, New Jersey, including, without limitation, the real property, interests in contracts, including Debtor's leases for real property with its tenants and any other assets integral to the operation of the Property.

**II.**        **Marketing Process and Due Diligence:**  The Debtor has and will continue to provide confidential information regarding the Property to potential purchasers (the "Initial Information").  Before receiving Initial Information, each potential purchaser must execute a confidentiality agreement, in a form satisfactory to the Debtor.  The Debtor will make the Initial Information and other information available through the real estate brokerage firm of **Holliday Fenoglio Fowler, L.P.** ("HFF").

{00705955.DOC;1 }705955

**III.         APA**:  The Debtor will provide all bidders with a form APA (the "APA"), which the Debtor shall file with the Court pursuant to a supplemental notice and will make the APA available through HFF, specifically for the sale of the Property.

**IV.         Auction:**   The public auction sale of the Property shall be conducted at the offices of Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, New York, New York, on **February 9, 2015 at 2:00 p.m.**, upon the terms and conditions set forth herein (the "Public Auction Sale").  The Public Auction Sale shall be an open auction where the material terms of the bids shall be disclosed to all bidders who attend the Public Auction Sale, and shall conclude when the auctioneer has determined, after all qualified bidders have been given suitable opportunity to increase their bids, that the bidding has closed.  By participating in the Public Auction Sale, each bidder acknowledges its acceptance of the Bidding Procedures.

**V.         Bid Deadline**:  All bids ("Bids") must be served upon and actually received by **HFF,** 200 Campus Drive, Suite 410, Florham Park, NJ 07932, Attention: Jose Cruz jcruz@hfflp.com, 973-549-2011;  and counsel to the Debtor, **c/o Robinson Brog Leinwand Greene Genovese & Gluck P.C.,** 875 Third Avenue, 9th Floor, New York, NY 10022, on or before **February 5, 2015 at 4:00 p.m.** (the "Bid Deadline").  The Debtor may extend the Bid Deadline for the delivery of Bids once or successively, without notice and for one or more bidders after consultation with HFF, the Kleins and Rialto.

**VI.         Qualified Bid Requirements:**  The Debtor will determine, after consultation with HFF, the Kleins and Rialto, and subject to the Bidding Procedures and the requirements below, whether a Bid is a Qualified Bid and, ultimately a Successful Bid (as these terms are defined below).  Any entity that desires to submit a Bid to purchase the Assets may do so in writing as follows:

    (a)     to be considered by the Debtor  an offer for the purchase of the Property must be a "Qualified Competing Bid" made by a Qualified Competing Bidder, as provided herein;

    (b)     the Stalking Horse Bidder, as described below, shall be deemed to be a Qualified Competing Bidder and the APA it enters into shall be deemed to be a Qualified Competing Bid;

    (c)     a Qualified Competing Bid shall consist of a timely and unconditional offer for the purchase of all of the

Property made by a Qualified Competing Bidder clearly setting forth the purchase price to be paid in Immediately Available Funds (as defined below), and be accompanied by a 10% deposit as provided for herein and an executed copy of the APA to purchase the Property (the "Deposit"), blacklined to show changes from the APA that the Debtor submits pursuant to a supplemental filing, clearly setting forth any conditions for closing and stating that the Qualified Competing Bid is irrevocable as set forth below, provided however, that the Debtor, in consultation with HFF, the Kleins and Rialto; in its sole discretion, may waive compliance with the deadline set forth in this paragraph;

(d)    a Qualified Competing Bid for the purchase the Property must be submitted by a party which the Debtor, upon consultation with HFF, the Kleins and Rialto, reasonably believe to be financially able to consummate the purchase of the Property (a "Qualified Competing Bidder");

(e)    a Qualified Competing Bid must contain terms and conditions no less favorable to the Debtor's estate than those terms and conditions contained herein and in APA;

(f)    a Qualified Competing Bid must not be contingent upon either financing or the conduct or results of any due diligence investigation, the absence of any adverse change or approvals by any board, shareholders or other entity;

(g)    a Qualified Competing Bid must provide for a closing date within a reasonable time after the Debtor obtains this Court's approval of this Sale, which closing date may only be extended by the Debtor, and subject to the provisions of the final cash collateral order;

(h)    Deposits shall be made in "Immediately Available Funds" which shall be cashier's check, certified check, wire transfer or cash;

(i)    a Bid must include evidence, including financial statements (or such other form of financial disclosure and credit-quality support or enhancement reasonably acceptable to the Debtor following consultation with HFF, the Kleins and Rialto),

sufficient to establish the financial wherewithal of the interested party to complete the contemplated transactions and, to the extent the interested party will rely upon the financial wherewithal of an affiliate, bid partner, or other sponsor (each, a "Sponsor"), evidence sufficient to establish the financial wherewithal and intent of the Sponsor to provide appropriate financial support;

(j)    a Bid must contain such and/or other information that will allow the Debtor, following consultation with HFF, the Kleins and Rialto, to make a reasonable determination as to the bidder's financial and other capabilities to consummate the transactions contemplated by the APA.

(k)    a Bid must disclose the identity of the bidder's organization, including confirmation that the bidder is acting as principal for the bidder's account and, if not, the basis upon which the bidder is acting and the identities of all other participants (if any, and their pre-petition and post-petition relationships with other bidders, the Debtor's major creditors and equity security holders of any of the foregoing, if any);

(l)    a Bid must disclose any agreements or understandings between the bidder and any third party with respect to the subject Asset or with respect to any possible transaction involving the Debtor.

(m)    if a Qualified Competing Bidder becomes the successful purchaser, its Deposit shall be increased to an amount equal to 10% of the successful purchase price (the "New Deposit") and the increase in amount between the Deposit and New Deposit must be deposited with Immediately Available Funds with the Debtor's counsel within 24 hours after the conclusion of the Public Auction Sale, and this New Deposit shall be deemed to be non-refundable and shall be forfeited if such purchaser fails to close in breach of its obligations under the Contract as fully described below;

(n)    The Debtor, in consultation with HFF, the Kleins and Rialto, may waive or modify any of these provisions as necessary;

Notwithstanding anything to the contrary, the Debtor, after consulting with HFF, the Kleins and Rialto, shall have the right to consider Bids that do not conform to one or more of the requirements set forth in these procedures and to deem such Bids Qualified Bids, provided that the Debtor's determinations under these Bidding Procedures are subject to any necessary court approval.

Notwithstanding anything to the contrary, the Successful Bidder's bid and the Backup Bidders bid must remain irrevocable in accordance with the terms of the APA.

Notwithstanding anything to the contrary, the Debtors also reserve the right, after consulting with HFF, the Kleins and Rialto, to reject any and all Bids.

**VII.** **Evaluation of Qualified Bids:** The sufficiency of any submitted Bid will be at the discretion of the Debtor, after consultation with HFF, the Kleins and Rialto  The Debtor shall as promptly as practicable, notify potential bidders who have (a) returned a signed confidentiality agreement, (b) timely submitted the information and documentation listed above and (c) who have  financial qualifications satisfactory to the Debtor, in consultation with HFF, the Kleins and Rialto, that they have been selected as a qualified bidder (each a "Qualified Bidder") and that their Bid is a "Qualified Bid."

**VIII.** **Stalking Horse Bids:** The Debtor reserves the right, in consultation with HFF, the Kleins and Rialto, to enter into an APA with any entity for the Sale of the Property, and designate that entity as the stalking horse (the "Stalking Horse") subject to the terms herein.  The Debtor, in consultation with HFF, the Kleins and Rialto, may offer a breakup fee to the Stalking Horse.  The Debtor is under no obligation to choose a Stalking Horse or offer a breakup fee for the Property.

In the event the Debtor selects a Stalking Horse, the Debtor, after consultation with HFF, the Kleins and Rialto, may offer bid protections, including a breakup fee of up to 2%, but in no event more than $1,000,000.00, of the purchase price of the Stalking Horse Bid.  If the Debtor identifies a Stalking Horse, the Debtor will file a supplemental notice (the "Stalking Horse Notice") with the Court identifying the Stalking Horse and the terms of the Stalking Horse Bid, including the terms and conditions for payment of any breakup fee.  Any entity wishing to object to the Stalking Horse shall have five (5) days from the filing of the Stalking Horse Notice to file an objection (the "Objection") with the Court and serve it on the Debtor.  In the event an Objection is filed and such Objection cannot be resolved consensually, the Debtor will schedule a hearing with the Court as promptly as practicable for

approval of the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee. If no Objections to the Stalking Horse Notice are received, the Stalking Horse and Stalking Horse Bid, including payment of any breakup fee, shall be deemed approved by the Court, without the need for further Court order. In the event the Debtor chooses a Stalking Horse, the Stalking Horse Bid will be a Qualified Bid.

**IX.** **The Auction**: The Public Auction Sale shall be conducted as set forth in Section IV, will be conducted for the Property, whereby the Property shall be sold free and clear of all liens, claims and encumbrances to the fullest extent allowed under sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code; provided that all liens and claims shall attach to the proceeds of the Property with the same validity, force and effect and subject to the same defenses as existed immediately before the Sale.

Only Qualified Bidders may bid at the Public Auction Sale. If multiple Qualified Bids are received, any Qualified Bidder (or its duly authorized representative) shall have the right to continue to improve its Qualified Bid at the Auction.

At the conclusion of the Auction, and subject to Court approval, following the Auction, the successful Bid or Bids shall be selected and announced by the Debtor (the "Successful Bid or Bids"), and the backup Bid or Bids shall be selected and announced by the Debtor (the "Backup Bid or Bids").

Within 48 hours of completion of the Auction, the entity or entities that made the Successful Bid or Bids (the "Successful Bidder") and the entity or entities that made the Backup Bid or Bids shall complete and sign all agreements, contracts, instruments, and other documents evidencing and containing the terms and conditions upon which such Successful Bid or Bids and Backup Bid or Bids were made.

The Auction may be adjourned or cancelled as the Debtor deems appropriate, after consultation with HFF, the Kleins and Rialto. Reasonable notice of such adjournment and the time and place for the resumption of the Auction or cancellation shall be given to all participants.

**X.** **Selection of Successful Bid or Bids:** If the Successful Bidder is unable to consummate the sale, the Debtor may consummate the proposed sale with the next highest or best bidder at the Public Auction Sale (the "Backup Bidder") without the need for further Court approval.

**XI.**         **Backup Bids:**  If the Successful Bidder fails to consummate the sale, breaches the APA, or otherwise fails to perform, the Debtor may consummate the proposed sale with the next highest or best bidder at the Auction – the Backup Bidder, which hereafter shall be included in the definition of "Successful Bidder," without the need for further Court approval.

**XII.**        **Sale Confirmation Hearing:**  All determinations of the Successful Bid or Bids and the Backup Bid or Bids shall be subject to and conditioned upon subsequent court approval.  After the Public Auction Sale and the selection of the Successful Bidder, a Hearing will be conducted by the Court on or about **February 11, 2015 at 10:00 a.m.** to confirm the results of the Auction.

**XIII.**       **"As Is, Where Is":**  The proposed transfer of any of the Debtor's Property will be on an "as is, where is" basis and without representations or warranties of any kind, nature, or description by the Debtor, its agents, or estate, except to the extent set forth in the applicable APA of each Successful Bidder as accepted by the Debtor and approved by the Court.  Except as otherwise provided in an APA, all of the Debtor's right, title and interest in the Property will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests in accordance with sections 363(f), 365 and/or 1123 and 1129 of the Bankruptcy Code.  Any other claim, lien or encumbrance, as set forth in the APA, will attach to the net proceeds of the sale of the particular asset.

**XIV.**        **Return of Deposits:**  If a Backup Bidder does not become the Successful Bidder, its Deposit shall be returned to it no later than five (5) business days after the Debtor's Closing of the Sale or fifteen (15) days after an order is entered approving the Sale, whichever is earlier.  Debtor shall also be entitled to retain the Deposit from any other Bidders other than the Successful Bidder or the Backup Bidder, but only upon the express consent of such other Bidder, and the Debtor shall be required to return such Deposit no later than five (5) days after the closing of the Sale, or fifteen (15) days after the order is entered approving the Sale.  The Debtor shall be required to return the Deposit to any Bidder who is not the Successful Bidder or the Backup Bidders and who does not agree to the retention of its Deposit, no later than 48 hours after the conclusion of the Public Auction Sale.

**XV.**         **Revoked Bids:**  At the Debtor's reasonable discretion, it may treat as waived and revoked any Qualified Competing Bid made by any Qualified Competing Bidder (other than the Stalking Horse Bidder) who does not attend the Public Auction Sale;

**XVI.** **Actual Auction:** If one or more Qualified Competing Bids have been timely submitted, the Debtor shall conduct the Public Auction Sale among Stalking Horse Bidder, and any Qualified Competing Bidder that has submitted a Qualified Competing Bid or Bids;

**XVII.** **Minimum Bid:** The minimum opening bid at the Public Auction Sale shall not be less than **$44,000,000.00** provided that if there is a Stalking Horse Bidder, such opening bid shall be the bid of the Stalking Horse Bidder, and any subsequent bid shall comply with the Bid Increments set forth in Paragraph XVIII below;

**XVIII.** **Bid Increments:** Subsequent bids, to be made on the record at the Public Auction Sale shall be in minimum increments of **$200,000.00**, after taking into account the Stalking Horse Breakup Fee, provided, however, that the Debtor may waive such minimum incremental bid amount after consultation with HFF, the Kleins and Rialto;

**XIX.** **Stalking Horse Bid:** The Stalking Horse Bidder may credit bid the Breakup Fee;

**XX.** **Close of Bidding:** At such time as it appears to the Debtor, in the exercise of its reasonable discretion, after consultation with HFF, the Kleins and Rialto, that none of the Qualified Competing Bidders present at the Public Auction Sale are prepared to advance the bidding, the Debtor shall (after giving fair warning, on the record, to those entities present) close the bidding on the record and the entity which immediately prior to the close of the bidding shall have submitted the highest and best offer for the purchase of the Property shall be declared the successful purchaser, subject to Bankruptcy Court Approval, and subject to entry of the confirmation order of the Bankruptcy Court, which order approves such sale; and

**XXI.** **Successful Bidder:** In the event that the Successful Bidder is an entity other than Stalking Horse Bidder, then such Successful Bidder shall be bound by all of the terms of its APA (as such terms, including those with respect to the purchase price, shall have been modified by the terms of such purchaser's winning bid) and upon closing of such sale be granted the protections of Sections 363(m) and (n) of the Bankruptcy Code;

**XXII.** **Damages for Failure to Close:** If the Successful Bidder fails to consummate the sale in accordance with the terms of its Successful Bid and applicable APA: (a) the Debtor will retain the Deposit of such bidder, to the

extent provided by the APA, and (b) the Debtor will maintain the right to pursue all available remedies against such bidder. If the Deposit is forfeited, such forfeiture shall not be deemed a liquidated damage provision and shall be deemed a measure of the Debtor's actual damage.

**XXIII.    Reservation of Rights:** Notwithstanding the Debtor's determination of a Stalking Horse and/or receipt of any Qualified Bids, the Debtor may continue to negotiate and solicit Bids. The Debtor reserves the right, after consultation with HFF, the Kleins and Rialto, to enter into agreements for the sale, without further notice to any party, which agreements, if any, will be subject to higher or otherwise better Bids at the Auction (including evaluation on a package or individual basis). The Debtor retains the right, after consultation with HFF, the Kleins and Rialto, to withdraw the Property from such sale, up to the date of the Auction or Sale Hearing. Formal approval of a Bid will not occur unless and until the Court enters an order approving and authorizing the Debtor to consummate the transaction.

The Debtor reserves the right to implement additional procedural rules after consultation with HFF, the Kleins and Rialto, provided such additional rules are not inconsistent with these Bidding Procedures.