UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>AC I INV MANAHAWKIN LLC,<br>AC I MANAHAWKIN MEZZ LLC, and<br>AC I MANAHAWKIN LLC<br><br>Debtors. | Chapter 11<br><br>Case No. 14-22791 through<br>14-22793 (RDD)<br><br>(Jointly Administered) |

**ORDER (I) PURSUANT TO §§105 AND 363 OF THE BANKRUPTCY CODE AND RULES 2002 AND 6004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE DEBTOR TO ENTER INTO AN AGREEMENT OF PURCHASE AND SALE AND AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS TO HAMPSHIRE GLOBAL PARTNERS LLC, FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, EXCEPTIONS AND OTHER INTERESTS; (II) APPROVING THE AGREEMENT OF PURCHASE AND SALE IN CONNECTION THEREWITH; (III) PURSUANT TO §§105 AND 365(A) OF THE BANKRUPTCY CODE AND RULES 6006 AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CERTAIN OF THE DEBTOR'S EXECUTORY CONTRACTS AND LEASES OF NON-RESIDENTIAL REAL PROPERTY; AND (IV) GRANTING RELATED RELIEF**

Upon the motion (the "Sale Motion"), dated March 19, 2015, of AC I

Manahawkin LLC (the "Debtor"), debtor and debtor in possession in the above-captioned

chapter 11 case (and collectively with the jointly administered cases of its affiliates, AC I

Manahawkin Mezz LLC and AC I INV Manahawkin LLC, the "Cases"), under sections 105, 363

and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as hereafter amended,

the "Bankruptcy Code") and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") for entry of an order (I) pursuant to §§105 and

363 of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy

Procedure authorizing the Debtor to enter into an agreement of purchase and sale and authorizing

the sale of substantially all of the Debtor's assets to Hampshire Global Partners LLC, or its

permitted assignee (the "Purchaser"), free and clear of any and all liens, claims, and interests of

third parties; (II) approving the Agreement of Purchase and Sale ("APA") in connection

therewith; (III) pursuant to §§105 and 365(a) of the Bankruptcy Code and Rules 6006 and 9014

of the Federal Rules of Bankruptcy Procedure authorizing the assumption and assignment of

certain of the Debtor's executory contracts and leases of non-residential real property; and (IV)

granting related relief; and a hearing having been held on April 9, 2015 in connection with the

Sale Motion (the "Sale Hearing"); and all parties in interest having been heard, or having had the

opportunity to be heard, regarding the Sale, the assumption, sale and assignment to the Purchaser

of the Assigned Contracts[1], the proposed Cure Amounts to be paid by the Debtor, the other relief

requested in the Sale Motion and any objections thereto; and the Court having considered (x) the

Sale Motion, (y) objections to the Sale Motion and (z) the arguments made and evidence

proffered or adduced in support of the Sale Motion at the Sale Hearing; and all objections to the

Sale Motion having been withdrawn at, or prior to, the Sale Hearing; and it appearing from the

affidavits of service filed with the Court that due and appropriate notice of the Sale Motion, the

Assumption and Assignment Notice, the proposed Cure Amounts and the other relief sought by

the Sale Motion, has been provided to all parties affected thereby; and it appearing that no other

or further notice hereof or thereof is required; and it appearing that entry of this Order is in the

best interests of the Debtor and its estate; and after due deliberation and good and sufficient

cause appearing therefor,

---

[1] Capitalized terms used herein without definition shall have the meanings ascribed to them in the Sale Motion unless the context clearly indicates to the contrary. For avoidance of doubt, the term Assigned Contracts includes all of the Leases (as such term is defined in the APA).

IT IS HEREBY FOUND AND DETERMINED THAT:[2]

A.      This Court has jurisdiction over the Cases, over the Motion as a core proceeding and over the parties and property affected hereby under 28 U.S.C. §§ 157(b) and 1334.  Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the parties may consummate the Sale immediately upon entry of this Order.  To any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Order.

C.      In accordance with the Sale Motion, and as evidenced by the affidavit of service, the Debtor has served the Notice of Sale Hearing, Sale Motion and any exhibits thereto, and the Notice of Assumption and Assignment (and any supplemental notices of assumption and assignment) on all parties who have a secured claim or assert or hold an interest in the assets being sold, all counter parties to contracts or leases being assumed, sold and assigned to Purchaser on the Closing Date, all parties who have requested service, all creditors and all other parties in interest.  The notice given by the Debtor of the Sale Motion, the Sale Hearing, the Sale, the assumption, sale and assignment of Assigned Contracts and the proposed Cure Amounts in connection therewith constitutes appropriate notice under the circumstances and complies with sections 363 and 365 of the Bankruptcy Code, Bankruptcy Rule 2002, 6004 and 6006.  No other or further notice of the Sale Motion, the Sale Hearing, the Sale, the assumption, sale and

---

[2]Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  <u>See</u> Fed. R. Bankr. P. 7052.

assignment of Assigned Contracts and the proposed Cure Amounts in connection therewith is required by applicable law.

D.      Each non-debtor counterparty to an Assigned Contract has had a reasonable opportunity to object to the assumption, sale and assignment of its contract, including on grounds of lack of adequate assurance of future performance by the Purchaser, and the Cure Amount set forth in the Notice of Assumption and Assignment (and any supplemental notices). The Cure Amounts set forth on the Notice of Assumption and Assignment (and any supplemental notices) are determined to be the sole amounts necessary to "cure" (within the meaning of section 365(b)(1) of the Bankruptcy Code) all "defaults" and "actual pecuniary losses" (within the meaning of section 365(b) of the Bankruptcy Code) under the Assigned Contracts.

E.      The Purchaser has demonstrated adequate assurance of future performance under the Assigned Contracts.

F.      The Purchaser is not an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.  The Purchaser negotiated the terms and conditions of the Sale in good faith and at arm's length.  The Purchaser has acted in good faith in all respects in connection with these Cases and the Sale in that (i) the Purchaser recognized that the Debtor was free to negotiate with any other party that expressed interest in consummating a Sale, (ii) all payments to be made by the Purchaser and other agreements or arrangements entered into by the Purchaser with the Debtor in connection with the Sale have been disclosed and (iii) the negotiation and execution of the APA and all other aspects of the Sale were conducted in good faith.  The Purchaser is a "good faith" purchaser within the meaning of section 363(m) of the Bankruptcy Code and is, therefore, entitled to the protections afforded thereby.  Neither the

Debtor nor the Purchaser has engaged in any conduct that would cause or permit the Sale to be avoidable under Section 363(n) of the Bankruptcy Code.

G.    The Debtor conducted a robust and open marketing and sale process both before and after the Debtor commenced these Cases.  As demonstrated by the testimony and other evidence proffered or adduced in these Cases beforehand and at the Sale Hearing, and the representations of counsel made on the record in these cases beforehand and at the Sale Hearing, the Debtor robustly and adequately marketed the Purchased Assets and conducted a sale process in a proper manner. The process afforded a full, fair and reasonable opportunity for any person to make a higher or otherwise better offer to purchase the Purchased Assets.

H.    The APA constitutes the highest and best offer for the Purchased Assets and will provide a greater recovery for the Debtor's stakeholders than would be provided by any other available alternative.  Thus, prompt consummation of the APA will serve the best interests of the Debtor and its estate by maximizing the value to be obtained from the Purchased Assets. The Debtor has demonstrated both (a) good, sufficient and sound business purpose and justification for the Sale because, among other things, the Debtor and its advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Purchased Assets and determined that (i) the terms and conditions set forth in the APA, (ii) the transfer to the Purchaser of the Purchased Assets under the APA and (iii) the consideration to be paid as reflected in the APA are all fair and reasonable and together constitute the highest or otherwise best value obtainable for the Purchased Assets and (b) compelling circumstances exist for the Sale under section 363 of the Bankruptcy Code before the confirmation of the Debtor's chapter 11 plan.

I.      The consideration being paid by the Purchaser to acquire the Purchased

Assets constitutes reasonably equivalent value and fair consideration under the Bankruptcy

Code, the Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act, the laws

of the State of New Jersey, and under the laws of the United States, any other state or territory.

J.      The Purchaser is not (i) a mere continuation of the Debtor or its estate and

there is no continuity between the Purchaser and the Debtor, (ii) holding itself out to the public

as a continuation of the Debtor or (iii) a successor to the Debtor or its estate, and the Sale does

not constitute a consolidation, merger or de facto merger of the Purchaser and the Debtor.  The

sale of the Purchased Assets is not being undertaken for the purpose of escaping liability for the

debts of the Debtor.  The Purchaser has given substantial consideration under the APA for the

benefit of the holders of claims against the estate of the Debtor and holders of equity in the

Debtor.  The consideration given by the Purchaser constitutes valid and valuable consideration

for the releases of any potential claims of successor liability of the Purchaser, which releases

shall be deemed to have been given in favor of the Purchaser by all holders of claims against or

interests in the Debtor or any of the Purchased Assets.

K.      Except for the approval of this Court, no consents or approvals are

required for the Debtor to consummate the sale of the Purchased Assets.  Neither the execution

of the APA, nor the consummation of the sale, conveyance and transfer of the Purchased Assets

in accordance with its terms will constitute a violation of any provision of the organizational

documents of the Debtor or any other instrument, law, regulation or ordinance under which the

Debtor or its assets are bound.  Upon entry of this Order, (i) the Debtor, by its manager, GC

Realty Advisors LLC, has full corporate power and authority to execute the APA and the other

Transaction Documents, and to consummate the Sale and other transactions contemplated by the

APA, and (ii) the transfer and conveyance of the Purchased Assets by the Debtor to the

Purchaser has been duly and validly authorized by all necessary action of the Debtor.

L.      As of Closing, the consummation of the Sale pursuant to the APA and the

documents and instruments of transfer and conveyance executed and delivered by the Debtor and

the Purchaser in connection therewith (the "Transaction Documents") will be a legal, valid, and

effective sale of the Purchased Assets to the Purchaser, and shall vest the Purchaser with all

right, title, privilege and interest in and to the Purchased Assets free and clear of all Liens and all

Liabilities accruing, arising or relating thereto any time prior to the Closing Date (except for

Permitted Exceptions identified in the APA).

M.      The Debtor may sell its interests in the Purchased Assets free and clear of

all Liens and all Liabilities, because the standards set forth in Section 363(f) have been satisfied.

All holders of Liens and Liabilities who did not object to the Sale Motion and the relief

requested therein, or who withdrew any objections to the Sale Motion and the relief requested

therein, are deemed to have consented to the Sale pursuant to section 363(f)(2) of the Bankruptcy

Code.  Those holders of Liens and Liabilities who did object fall within one or more of the other

subsections of section 363(f), and all holders of Liens and Liabilities are adequately protected by

having their Liens or Liabilities, if any, attach to the cash proceeds of the Sale attributable to the

Purchased Assets against or in which they claim an interest, with the same priority, validity,

force and effect as they attached to such property immediately before the closing of the Sale.  If

the sale of the Purchased Assets to the Purchaser, and the assumption, sale and assignment of the

Assigned Contracts to the Purchaser, by the Debtor were not free and clear of Liens and

Liabilities (other than Permitted Exceptions) as set forth in the APA and this Order, or if the

Purchaser or the Purchased Assets would, or in the future could, be liable for any Liens or

Liabilities (other than Permitted Exceptions), the Purchaser would not have entered into the APA and would not consummate the Sale or the other transactions contemplated by the APA, thus adversely affecting the Debtor and its estate.

N.    Upon entry of this Order, the APA is a legal, valid and binding contract between the Debtor and the Purchaser and is enforceable according to its terms.

O.    As of Closing, the consummation of the Sale and the other transactions contemplated by the APA will be legal, valid and properly authorized under all applicable provisions of the Bankruptcy Code, including Sections 105(a), 363(b), 363(f), 363(m), 365(a), 365(b) and 365(f), and all of the applicable requirements of such sections have been complied with in respect of the transaction.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1.    The Sale Motion is granted and approved in all respects and the Sale and other transactions contemplated thereby are hereby approved in all respects.

2.    All objections, if any, to the entry of this Order are overruled to the extent not otherwise withdrawn or resolved as set forth on the record of the Sale Hearing.

3.    This Order, the APA and other Transaction Documents shall be binding in all respects upon all stakeholders (whether known or unknown) of the Debtor, the Purchaser, all affiliates, successors and assigns of the Purchaser and the Debtor, and any subsequent trustee appointed or elected for the estates of the Debtor or otherwise in the Case or upon a conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code, and shall not be subject to rejection.

## SALE OF THE PURCHASED ASSETS

4.       The APA, the other Transaction Documents, and all of the terms and conditions thereof, are hereby approved in their entirety.  Pursuant to Sections 105, 363 and 365 of the Bankruptcy Code, the sale, transfer, conveyance and assignment of the Purchased Assets, including the assumption, sale and assignment of the Assigned Contracts by the Debtor to the Purchaser pursuant to the APA, are approved.  The Debtor by its manager, GC Realty Advisors LLC, is authorized and directed to execute and deliver any and all documents, instruments and agreements and consummate the transactions contemplated by this Order, the APA, the Transaction Documents and all other agreements and documents related thereto and contemplated thereby in consideration of the purchase price specified therein, including assigning and transferring to the Purchaser or its permitted assignee all of the rights, title, privileges and interests (including common law rights) of the Debtor and its estate in and to all of the tangible and intangible property of the Debtor included among the Purchased Assets, except as otherwise explicitly provided by the APA.  Without limiting the foregoing, the Debtor is authorized and directed to take all actions as may be reasonably requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser the Purchased Assets (including the Assigned Contracts), or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the APA, the Transaction Documents or other ancillary documents.

5.       The transfer at Closing of the Purchased Assets (including the Assigned Contracts) by the Debtor to the Purchaser is legal, valid and effective and, pursuant to section 363(f) of the Bankruptcy Code, shall vest the Purchaser or its permitted assignee as of Closing with all rights, title, privileges and interests of the Debtor and its estates in and to the Purchased Assets, free and clear of any and all liens, claims and interests of third parties, whether known or

unknown, including Liabilities (i) relating to any tax arising under, out of or in connection with

or in any way relating to the operation of the Purchased Assets prior to the Closing, (ii) Liens

and Liabilities arising under any mortgage, deed of trust, security interest, conditional sale or

other title retention agreement, pledge, lien, judgment, demand, encumbrance, right of first

refusal or charge of any kind or nature, if any, including any restriction on the receipt of income

or on the use, voting, the transfer or other exercise of any attributes of ownership, and

(iii) relating to any debt, claim, obligation, liability, demand, guaranty, option, right, contractual

or other commitment, indemnity, indemnity obligation and warranty, including without

limitation the REA's and the Parking Reservation, relating to any act, omission or circumstance

arising prior to the Closing Date, whether known or unknown, contingent or otherwise, whether

arising prior to or subsequent to the commencement of the Cases, and whether imposed by

agreement, understanding, law, equity or otherwise, including any claim otherwise arising under

doctrines of successor liability, and shall be free and clear of any and all Liens and Liabilities,

including any and all claims pursuant to any successor or successor-in-interest liability theory;

*provided*, *however*, that the Purchaser shall not be relieved of liability arising after the date of

Closing with respect to the Permitted Exceptions.  Any and all Liens and Liabilities shall attach

to the cash proceeds of the Sale payable by the Purchaser to the Debtor at the Closing, with the

same priority, validity, force and effect as they now have against the Purchased Assets and

subject to any rights, claims or defenses of the Debtor or its estate with respect thereto.

       6.      The objection to the sale filed by South Jersey Land Development, LLC

("SJLD") (Doc No. 128) (the "SJLD Objection") has been withdrawn based on the further terms

of this paragraph. It is the Order of this Court that as concerns the Parking Rights[3] and Parking

Restrictions contained in the 1986 Deed[4] neither the real property of the Debtor included among

the Purchased Assets to be sold to Purchaser (the "Shopping Center"), nor the adjacent parcel of

real property owned by SJLD as more particularly described in the Deed from

OrixWoodmontManhawkin Venture to South Jersey Land Development, LLC recorded on

March 12, 2004 in Deed Book 11959, page 1193 *et seq*. (the "Friday's Parcel") shall be bound

by or subject to the easements or restrictions, including the Parking Rights and Parking

Restrictions, set forth in the 1986 Deed, and such easements and restrictions are hereby deemed

to be discharged of record.

      7.     If any person or entity that has filed a financing statement, mortgage,

mechanic's lien, *lis pendens*, judgment or other document or agreement evidencing a lien against

or in the Purchased Assets has not delivered to the Debtor prior to the Closing of the Sale, in

proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, releases of all liens that the person or entity has with respect to the

Purchased Assets, or otherwise, then (a) the Debtor or the Purchaser shall be hereby authorized

to execute and file in any jurisdiction such statements, instruments, releases, and other

documents on behalf of the person or entity with respect to the Purchased Assets to remove any

record, notice, filing or financing statement recorded to attach, perfect or otherwise notice any

lien or encumbrance that is extinguished or otherwise released pursuant to this Order under

Section 363 and the related provisions of the Bankruptcy Code, and (b) the Purchaser is hereby

---

[3] Capitalized terms used in this decretal paragraph and not otherwise defined in the APA shall have the meanings assigned to them in Debtor's Reply to the SJLD Objection (Doc No. 130) (the "Reply"), unless the context clearly indicates to the contrary.

[4] The Deed from Manahawkin Sand & Gravel Co., Inc to Stephen D'Onofrio dated October 14, 1986 and recorded on October 20, 1986 in Deed Book 4471, page 0611 *et seq*.

authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all liens in the Purchased Assets of any kind or nature whatsoever.

8.    This Order (a) shall be effective as a determination that, upon the Closing of the Sale, all Liens and Liabilities of any kind or nature whatsoever existing as to the Purchased Assets being sold by the Debtor prior to the Closing of the Sale have been unconditionally released, discharged, and terminated, and that the conveyances described herein have been effected, and (b) shall be binding upon and shall govern the acts of all entities including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

9.    All entities, including all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade stakeholders, and other stakeholders, holding Liens and/or Liabilities of any kind or nature whatsoever against or in the Debtor or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtor's business, the Purchased Assets, the operation of the Debtor's business prior to the Closing of the Sale, or the transfer of the Purchased Assets to the Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against

the Purchaser, any of its Affiliates, or their respective successors or assigns, its property, or the Purchased Assets, such persons' or entities' Liens and/or Liabilities.

10.    The Sale, pursuant to this Order and the APA, shall be binding upon the Purchaser, its permitted assignee, the Debtor, all current and former creditors, employees, equity holders and parties in interest in this case, all non-debtor parties to the Assigned Contracts, all persons having or asserting a claim against, or an interest in, the Debtor or the Purchased Assets, and all parties to any actions, including any contested matters, interposing objections to the Sale Motion or the relief granted hereby, that directly or indirectly contest the power or authority of the Debtor to sell, assume and assign, transfer and convey the Purchased Assets, or Purchaser's right, authority or ability to receive, purchase, accept or assume the Purchased Assets, including the leases and any other Assigned Contracts, or that seek to enjoin any such sale, assumption, assignment, transfer or conveyance and each of their respective successors and assigns.

11.    Except as expressly permitted by the APA, the Purchaser shall have no liability or responsibility for any Lien or Liability or arising, accruing or relating to a period prior to the Closing Date.

12.    At the Closing, Purchaser shall (a) direct the Escrow Agent to release the Deposit to the Debtor in accordance with the terms of the APA, and (b) pay to the Debtor the balance of the Purchase Price, less the Deposit and the Holdback Escrow and subject to adjustment as provided for in the APA.  Any amount that becomes payable by the Debtor to the Purchaser under the APA or other Transaction Documents shall be paid by the Debtor in the time and manner provided for in the APA or other Transaction Document, as applicable, without further Court order.

ASSUMPTION AND ASSIGNMENT OF ASSIGNED CONTRACTS

13.     Pursuant to sections 105(a) and 365 of the Bankruptcy Code, and subject to and conditioned upon the Closing of the Sale, the Debtor's assumption, sale and assignment to the Purchaser, and the Purchaser's assumption on the terms set forth in the APA, Assignment and Assumption Agreements and the other Transaction Documents, of the Leases and any other Assigned Contracts is hereby approved.

14.     Any party having the right to object to the assumption, sale or assignment of the Leases and other Assigned Contracts that failed to object to such assumption, sale or assignment is deemed to have consented to such assumption, sale and assignment as required by sections 363 and 365 of the Bankruptcy Code.

15.     The Cure Amounts set forth in the Notice of Assumption and Assignment (and any supplemental notices) shall be binding for all purposes upon each non-debtor counterparty to the Assigned Contracts. Each counterparty to a Lease or other Assigned Contract shall be forever barred, enjoined and prohibited from objecting to the assumption, sale and assignment of the relevant Lease or other Assigned Contract and/or Cure Amount, and from asserting against the Debtor or the Purchaser or any affiliates any right of setoff, condition to assignment and/or any additional Cure Amount with respect to such Lease or other Assigned Contract.

16.     Notwithstanding anything to the contrary in this Order, the APA or any documents ancillary thereto (including, without limitation, any Assignment and Assumption of Leases): (A) The TJX Companies, Inc. ("TJX") shall be entitled to commence an audit (a "CAM Audit") of the Debtor's invoices, books and records in relation to any incremental charges or other sums payable by TJX in addition to minimum rent (pursuant to Section 5.1 of the Lease, as hereinafter defined) and percentage rent (pursuant to Section 7.3 of the Lease) pursuant to that certain Lease Agreement dated December 13, 2001, as amended, between the Debtor (successor in

ACTIVE 29615695v104/16/2015

interest to Woodmont Real Estate Corp.), as landlord, and TJX, as tenant (the "Lease"), including,

without limitation, any and all sums payable pursuant to Article VI, Section 10.4 and Schedule B

paragraphs 7, 10 and 11 of the Lease, in each case with respect to calendar years 2011 through

2014; (B) the Debtor shall permit TJX to commence the foregoing CAM Audit within ten (10)

business days after the date upon which this Order is entered, and shall provide such access to

the Debtor's invoices, books, records and personnel as TJX may reasonably require to complete

such audit within ten (10) business days from the actual commencement thereof; (C) (i) the

Debtor shall pay to TJX, on or prior to the Closing Date (as defined in the APA), in cash and in

full, any amounts to which TJX may be entitled (if any) as a result of such CAM Audit pursuant

to the terms of the Lease and (ii) TJX shall pay to the Debtor, on or prior to the Closing Date, in

cash and in full, any amounts to which the Debtor may be entitled (if any) as a result of such

CAM Audit pursuant to the terms of the Lease; and (D) the automatic stay pursuant to section

362 of the Bankruptcy Code is hereby lifted as and to the extent necessary to permit TJX and the

Debtor to effectuate clauses (A), (B) and (C) of this paragraph.   For purposes of clarity, under

no circumstances shall Purchaser, or its permitted assignee, have any responsibility, obligation or

other Liability to TJX, including related to any CAM Audit, for any periods prior to the Closing

Date, provided, however, that as long as Purchaser receives all 2015 billings and statements for

the period prior to Closing, which Seller shall provide in accordance with the terms of the APA

and the Lease, Purchaser shall provide to TJX, in accordance with terms of the Lease, a CAM

reconciliation statement for calendar year 2015, and if based on such CAM reconciliation

statement, or any CAM Audit of same conducted by TJX, which shall be commenced by TJX

within ten (10) business days of the date Purchaser delivers the CAM reconciliation statement, it

is established that TJX is owed any amounts with respect to the period from January 1, 2015

through the Closing Date (the "2015 Pre-Closing CAM Credit"), then, in accordance with the provisions of Section 6.14 of the APA, Purchaser shall pay the amount of the 2015 Pre-Closing CAM Credit to TJX from the Holdback Escrow, but Purchaser shall have no liability to pay the 2015 Pre-Closing CAM Credit to the extent the funds are not available from the Holdback Escrow;  provided, further, that the Purchaser shall set aside an amount of $20,000 ("Set Aside Amount") from the Holdback Escrow, which shall be used solely to satisfy any TJX 2015 Pre-Closing CAM Credit (if any), with any remainder of such Set Aside Amount being returned to the Holdback Escrow upon satisfaction of such 2015 Pre-Closing CAM Credit (if any), subject to the terms of section 6.14 of the APA.

17.    There shall be no rent accelerations, assignment fees, increases or any other fees or premiums charged to, or rights of set-off or recoupment asserted or exercised against, the Purchaser as a result of the assumption, sale or assignment by the Debtor to the Purchaser of the Assigned Contracts, and the validity of such assumption, sale or assignment shall not be affected by any dispute, defense, claim, right of set-off or recoupment, right of first refusal or offer or otherwise, between the Debtor or any of its affiliates and any counter-party to any Assigned Contract.  The Leases and other Assigned Contracts, upon assignment and sale to the Purchaser or its permitted assignee, shall be deemed valid and binding, enforceable against the parties thereto, without breach or default by the Purchaser and in full force and effect in accordance with its terms as of and effective on the Closing Date.

18.    The Leases and other Assigned Contracts shall be transferred to, and remain in full force and effect for the benefit of, Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assigned Contract (including those of the type

described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.

19.     Any provision in any Assigned Contract that prohibits or conditions the assignment of such Assigned Contract or allows the party to such Assigned Contract to terminate, to recapture, to impose any penalty, condition on renewal or extension or to modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect.  All requirements and conditions under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Purchaser of the Assigned Contracts have been satisfied.  On the Closing Date, in accordance with Sections 363 and 365 of the Bankruptcy Code, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtor under the Leases and other Assigned Contracts.

## ASSUMED LIABILITIES

20.     The Purchaser (as a successor entity, successor employer or otherwise) has not acquired and will not acquire or assume or be deemed to have acquired or assumed any obligations or liabilities of the Debtor, including asserted or unasserted, known or unknown, employee related claims, payroll taxes, employee contracts, employee seniority accrued by the employees while employed by the Debtor or its affiliates, pension plan contribution or successor liability, and all entities are hereby permanently enjoined and restrained from asserting or prosecuting any claim against the Purchaser or its permitted assignee or agents with respect thereto.

21.     Neither the Purchaser, its permitted assignee, nor their respective successors or assigns, shall be obligated or liable, either directly or indirectly, as successor, transferee or otherwise, for any liabilities of the Debtor or any of its affiliates (whether under

federal or state law or otherwise) as a result of the sale or purchase of the Purchased Assets or employment of any former employee of the Debtor.  Neither the Purchaser, its permitted assignee, or their respective successors and assigns, nor the Purchased Assets, shall be or be deemed to be a successor or successor in interest or responsible person or potentially responsible person to the Debtor or any current or former creditor, employee, equity holder or other party in interest with respect to any Lien or Liability, and to the extent permitted by applicable law, none shall have any liability (whether under federal or state law or otherwise) for successor liability, including with respect to any Liens or Liabilities arising from or under products liability, tax, environmental, employment or other legal provisions.

### OTHER PROVISIONS

22.    The Sale has been undertaken by the Purchaser and the Debtor at arm's length and without collusion, and the Purchaser will acquire the Purchased Assets pursuant to the APA, in good faith, within the meaning of section 363(m) of the Bankruptcy Code and is entitled to all of the protections in accordance therewith.

23.    The provisions of this Order are non-severable and mutually dependent.

24.    This Order and all provisions of the APA and the Transaction Documents shall be binding upon any successors and assigns of the Debtor, including any trustee appointed for the Debtor in its Chapter 11 case or in any superseding case under Chapter 7 of the Bankruptcy Code or otherwise and any entity asserting a Lien or a Liability against the Purchased Assets to be sold to the Purchaser pursuant to the APA.

25.    The APA and the Transaction Documents may be amended, modified or supplemented, or the provisions thereof waived, in accordance with the terms of the APA without further order of this Court or notice thereof to any party, provided that any such amendment does not impose on the Debtor a material burden, cause the Sale to be materially less

favorable to the Debtor or result in a material delay of the Closing (a "Material Change").  In the event of Material Change, the Debtor shall provide notice to the Court, the U.S. Trustee and the Notice Parties (defined below) who shall have three business days from the date of such notice to object in writing to such amendment, modification, supplement or waiver, and upon any such timely written objection, such amendment, modification, supplement or waiver shall be permitted only pursuant to an order of this Court. For purposes of this clause, the Notice Parties shall include all parties having filed notices of appearance in the Cases.

26.    The failure specifically to include any particular provisions of the APA or any other Transaction Document in this Order shall not diminish or impair the effectiveness of such provisions, it being the intent of the Court that the APA and the other Transaction Documents be authorized and approved in their entirety.

27.    Under New Jersey Statute 46:15-10(g) and  Section 1146 of the Bankruptcy Code, the Sale is exempt from Transfer Taxes (as such term is defined in the Sale Motion to include taxes upon the grantor under N.J.S.A. 46:15-7 and 7.1, and taxes upon the grantee under N.J.S.A. 46:15-7.2); *provided, however*, that the exemption under Section 1146 of the Bankruptcy Code is conditioned upon the transfer occurring post-confirmation and such transfer being necessary to consummation of the plan, in accordance with *In re New 118th, Inc.*, 398 B.R. 791 (Bankr. S.D.N.Y. 2009).

28.    Each and every governmental agency or department of the State of New Jersey as well as each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and the other Transaction Documents which shall be accepted for filing without payment of any Transfer Taxes.

29.     To the extent of any inconsistency between the provisions of the APA (or any documents executed in connection therewith) and this Order, the provisions contained in this Order shall govern.

30.     To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Purchased Assets sold, transferred, or conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

31.     Any amount that becomes payable by the Debtor to the Purchaser pursuant to the provisions of Section 10.2 of the APA, and, after the Closing, any amount that becomes payable by the Debtor to the Purchaser under the APA or other Transaction Document shall constitute administrative expenses of the Debtor's estate under Sections 503(b) and 507(a)(2) of the Bankruptcy Code and (b) shall be paid by the Debtor in the time and manner provided for in the governing Section of the APA, without further Court order.

32.     Upon the Payment of the Purchase Price (subject to all adjustments and holdbacks provided for in the APA) by Purchaser to the Debtor and the completion of the Closing in accordance with the APA, other than claims pursuant to or in connection with the APA or any of the other Transaction Documents, the Debtor (for itself and on behalf of any Person claiming through or under the Debtor) hereby fully discharges and releases Purchaser and its affiliates, principals, agents, shareholders and representatives acting in any of their capacities from any and all Liabilities and any and all claims and causes of action, including any claims or causes of action under Chapter 5 of the Bankruptcy Code, arising prior to the Closing Date.

33.     Pursuant to Section 363(f)(5) of the Bankruptcy Code, no bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the sale.

34.     The Court shall retain exclusive jurisdiction to (i) interpret, construe and enforce the provisions of the APA, the Transaction Documents, all amendments thereto, any waivers and consents thereunder, and each of the agreements executed in connection therewith and this Order in all respects, (ii) hear and determine any and all disputes arising under or related to the APA and the Transaction Documents, except as otherwise provided therein, (iii) enforce the injunctions set forth herein in favor of Purchaser, and its permitted assignee, or any of their respective successors and assigns, each of which injunction shall act to bar any claim enjoined and as a complete defense to any such claim or action and (iv) compel transfer and delivery of the Purchased Assets to the Purchaser.

35.     Any entity that is presently, or on or before the Closing Date may be, in possession of some or all of the Purchased Assets to be transferred as of the Closing Date are hereby directed to surrender possession of the Purchased Assets to Purchaser on the Closing Date at the entity's sole expense.

36.     Any assets received by the Debtor or any successor thereto (including an estate representative or a Chapter 7 trustee) following the Closing in respect of Purchased Assets, shall be immediately delivered to the Purchaser in accordance with the APA.

37.     For purposes of Section 363(b)(1) of the Bankruptcy Code, the Debtor has not, in connection with offering a product or service, disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in Section 101(41)(A) of the Bankruptcy Code) about individuals to persons whom are not affiliated with the Debtor.

ACTIVE 29615695v104/16/2015

38.     Nothing contained in any plan confirmed in this case or any order of the

Court confirming such plan shall conflict with or derogate from the provisions of the APA, any

Transaction Document or the terms of this Order.

39.     Pursuant to Bankruptcy Rules 6004(h) and 6006(d), this Order shall be

effective immediately upon entry, and the Debtor and the Purchaser are authorized, but not

required, to close the Sale immediately upon entry of this Order.


Dated: April 16, 2015
        White Plains, New York


        ___/s/Robert D. Drain_____
        UNITED STATES BANKRUPTCY JUDGE