UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:                                                    Chapter 11

**AC I INV MANAHAWKIN LLC,**                              Case Nos. 14-22791 through
**AC I MANAHAWKIN MEZZ, LLC, AND**                       14-22793 (RDD)
**AC I MANAHAWKIN, LLC,**                                (Jointly Administered)

                              Debtor.

---------------------------------------------------------------x


PLAN OF LIQUIDATION OF
AC I MANAHAWKIN, LLC




**ROBINSON BROG LEINWAND**
**GREENE GENOVESE & GLUCK P.C.**
**Attorneys for the Debtor**
875 Third Avenue
New York, New York 10022
Tel. No.:  212-603-6300

**A. Mitchell Greene, Esq.**




**Dated:**  New York, New York
                April 30, 2015

**AC I MANAHAWKIN, LLC** the debtor and debtor in possession (the "Debtor"),

proposes the following plan of liquidation (the "Plan") pursuant to sections 1121(a), 1122 and

1123 of title 11 of the United States Code.

### ARTICLE 1.

### DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following

meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not

defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall

have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and

vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the

masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan

are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract,

instrument, release or other agreement or document being in a particular form or on particular

terms and conditions, means that such document shall be substantially in such form or

substantially on such terms and conditions except as stated otherwise in the Plan; (vii) any

reference to an existing document or exhibit filed or to be filed means such document or exhibit,

as it may have been or may be amended, modified or supplemented; (viii) the words "herein",

"hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its

entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth

in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any

reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code,

refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date.

1.1    "**Administrative Bar Date**" means the first Business Day that is 30 days after the Effective Date.

1.2    "**Administrative Claim**" means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order allowing such claim in whole or in part, to the extent such claim is Allowed.

1.3    "**Administrative Expense**" means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330 or 331 of the Bankruptcy Code.

1.4    "**Administrative Tax Claim**" means an Administrative Claim for a tax due to a Governmental Unit.

1.5    "**Allowed Claim**" means a Claim or any portion thereof against the Debtor that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

1.6    "**Allowed Interest**" means an Interest in the Debtor that has not been

disallowed and is not a disputed Interest with respect to which (i) a Proof of Interest has been

timely filed or, (ii) if no Proof of Interest has been timely filed, that has been or hereafter is listed

by the Debtor in the Schedules.

1.7    **"APA"** means the agreement of purchase and sale between the Debtor as

Seller and Hampshire Global Partners LLC as Purchaser which APA was approved by the

Bankruptcy Court by the Sale Approval Order entered on April 16, 2015 (ECF doc. no. 133).

1.8    **"Applicable Rate of Interest"** means (i) in the case of any Claim for

which interest has not been asserted, the Federal Judgment Rate; and (ii) for any Claim in which

interest has been asserted, the applicable contract rate of interest as set forth therein, subject to

the Debtor's rights to object to such interest or otherwise enter into an agreement with the Holder

of such Claim that establishes the applicable rate of interest.

1.9    **"Available Cash"** means the sum of cash remaining in the Debtor's

Estate.

1.10    "**Bankruptcy Code**" means title 11 of the United States Code, as

amended from time to time and effective as to cases filed on the Petition Date.

1.11    "**Bankruptcy Court**" means the United States Bankruptcy Court for the

Southern District of New York or the United States District Court for the Southern District of

New York to the extent it withdraws the reference over all or any portion of this Chapter 11 Case

pursuant to section 157(d) of title 28 of the United States Code.

1.12    "**Bankruptcy Fees**" means all fees and charges assessed against the Estate under section 1930 of title 28 of the United States Code.

1.13    "**Bankruptcy Rules**" means (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in effect on the Petition Date, together with any and all amendments and modifications thereto that were subsequently made applicable to these Chapter 11 Cases.

1.14    "**Bar Date**" means January 5, 2015.

1.15    "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

1.16    "**Case**" means this case under chapter 11 of the Bankruptcy Code commenced in the Bankruptcy Court on the Petition Date and styled *In re AC I Manahawkin, LLC*, Case No. 14-22793 (RDD);

1.17    "**Cases**" means the jointly administered cases of In re AC I INV Manahawkin LLC, AC I Manahawkin Mezz, LLC and AC I Manahawkin, LLC.

1.18    "**Cash**" means, on any Business Day, immediately available funds, in United States dollars, which may be spent or transferred without restriction no later than the next Business Day.

1.19    "**Claim**" means a "claim," as defined in section 101(5) of the Bankruptcy Code.

1.20    **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests as established pursuant to article 3 of the Plan.

1.21    **"Closing"** means the closing of the sale of the Property to the Purchaser

1.22    **"Closing Date"** means the date of the closing of the sale of the Property to the Purchaser.

1.23    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

1.24    "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.25    "**Confirmation Order**" means an Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, in form and substance reasonably satisfactory to the Debtor.

1.26    "**Creditor**" means a Holder of an Allowed Claim.

1.27    "**Cure Amount**" means any amount required, pursuant to sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to any Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.28    "**Debtor**" means AC I Manahawkin, LLC.

1.29    **"Deutsche Bank"** means Deutsche Bank Trust Company America, as Trustee for the Registered Holders of the Wells Fargo Commercial Mortgage Securities,Inc., Commercial Mortgage Pass-Through Certificates, Series 2011-C3.

1.30 **"Deutsche Bank Note"** means collectively, each and every agreement, promissory note, including any amendment or modification thereof, or allonge thereto, evidencing a claim held by Deutsche Bank.

1.31 **"Deutsche Bank Secured Claim"** means the Secured Claim against the Debtor, or the Property, on account of the Deutsche Bank Note or the Deutsche Bank Security Documents.

1.32 **"Deutsche Bank Security Documents"** means each and every mortgage, assignment of rents, security agreements, and/or any such other documents granting Deutsche Bank a lien on the Property to secure the Deutsche Bank Note.

1.33 **"Deutsche Bank Settlement Stipulation"** means the stipulation between the Debtor and Rialto Capital Advisors, LLC, special servicer to Deutsche Bank, approved by the Court on March 27, 2015 (ECF doc. no. 125), a copy of which is attached hereto as Exhibit A and incorporated herein by reference.

1.34 **"Disbursing Agent"** means Debtor's counsel, Robinson Brog Leinwand Greene Genovese & Gluck P.C.

1.35 **"Disclosure Statement"** means the *Disclosure Statement for the Plan of Liquidation of AC I Manahawkin, LLC,* including all exhibits, attachments or amendments thereto, approved by Final Order of the Bankruptcy Court.

1.36 **"Disputed Claim"** means

(a) any Claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed or is subject to a pending appeal;

(b)    any Claim (including an Administrative Expense Claim), or portion thereof, that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, or the estimation of such Claim, has been filed with the Bankruptcy Court within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order;

(c)    Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim represented by a Proof of Claim shall be deemed to be a Disputed Claim in its entirety if, (x) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (y) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim has been listed in the Schedules.

1.37    "**Disputed Claim Reserve**" means the segregated account or accounts established by the Disbursing Agent pursuant to section 7.7 of the Plan**.**

1.38    "**Effective Date**" means the first Business Day after the Confirmation Order becomes a Final Order.

1.39    "**Estate**" means the Estate of the Debtor created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.40    "**Executory Contract**" means an executory contract within the meaning of section 365 of the Bankruptcy Code.

1.41    "**Final Order**" means a judgment, order, ruling or other decree of the Bankruptcy Court (or court of competent jurisdiction) entered by the Clerk on the docket of the Chapter 11 Case (or on the docket of any court of competent jurisdiction) that has not been reversed, vacated or stayed and as to which (i) the time to appeal, petition for *certiorari* proceeding or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for *certiorari* proceeding, or other proceedings for a new trial, reargument or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court (or other court of competent jurisdiction) shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument or rehearing shall have expired; *provided, however*, that the possibility that a motion under Bankruptcy Rule 9023 or Bankruptcy Rule 9024, or any analogous rule under the Bankruptcy Rules (or rule of a court of competent jurisdiction), may be filed relating to such order shall not cause such order not to be a Final Order.

1.42    "**Hampshire**" means Hampshire Global Partners LLC or its permitted assignee, the purchaser pursuant to the APA which was approved by the Bankruptcy Court by the Sale Approval Order entered on April 16, 2015 (ECF doc. no. 133).

1.43    "**Holder**" means a Person holding a Claim or Interest.

1.44    "**Interest**" means an equity interest in the Debtor.

1.45    "**Interest Holder**" means the Holder of an Allowed Interest in the Debtor.

1.46    "**Leases**" means any Unexpired Lease of real property between the Debtor and its Tenants, if any.

1.47    "**Legal Holiday**" means a "Legal Holiday" as that term is defined in Bankruptcy Rule 9006(a).

1.48    "**Lien**" means any charge against or interest in property to secure payment of a debt or performance of an obligation.

1.49    "**Other Secured Claims**" means any other Secured Claim against the Property that is not the Deutsche Bank Secured Claim.

1.50    "**Order**" means an order of the Bankruptcy Court.

1.51    "**Person**" means a person as defined in 11 U.S.C. § 101(41).

1.52    "**Petition Date**" means June 4, 2014, the date on which this Case was commenced by the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code by the Debtor.

1.53    "**Plan**" means this *Plan of Liquidation of AC I Manahawkin, LLC,* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.54    "**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.55    "**Professional**" means all professionals employed by the Debtor under sections 105, 327 or 330 of the Bankruptcy Code to render professional services in the Chapter 11 Case pursuant to a Final Order.

1.56    "**Professional Fees**" means compensation for services rendered, and reimbursement of expenses incurred, by Professionals prior to the Effective Date, as allowed and awarded by Final Order following application, in accordance with sections 330 and 331 of the Bankruptcy Code.

1.57    "**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.58    "**Proof of Interest**" means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.59    "**Property**" means the real property and improvements thereon located at 601 Washington Avenue, Manahawkin, New Jersey, commonly known as Manahawkin Commons along with the other assets identified in the APA as the "Purchased Assets".

1.60    "**Pro Rata**" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.61    "**Purchaser**" means Hampshire Global Partners LLC or its permitted assignee, the purchaser pursuant to the APA which was approved by the Bankruptcy Court by the Sale Approval Order entered on April 16, 2015 (ECF doc. no. 133).

1.62    "**Released Entities**" means individually and collectively, the Debtor, its Creditors and its Interest Holder.

1.63    "**Post Effective Date Debtor**" mean the Debtor from and after the Effective Date.

1.64    "**Sale Approval Order**" means the order approving the APA and the sale transaction between the Debtor as Seller and Hampshire as Purchaser.

1.65    "**Sale Proceeds**" means the net proceeds the Debtor receives from the sale of the Property to Purchaser.

1.66    "**Schedules**" mean the schedules of assets and liabilities, any amendments with respect thereto, and the *Statement of Financial Affairs* filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.67    "**Secured Claim**" means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a Lien on Property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim Holder's interest in the Estate's interest in such Property or to the extent of the amount subject to set-off, as applicable, as determined by a Final Order pursuant to section 506(a) of the Bankruptcy Code or as provided for in the Plan.

1.68    "**Tenants**" means all non-Debtor parties to Leases with the Debtor for space on the Property, if any.

1.69    "**Transfer Taxes**" means any and all stamp taxes or similar taxes, if and as applicable and imposed by a Governmental Unit with respect to the transfer of the Property or interest therein.

1.70    "**Unsecured Claim**" means a Claim against the Debtor that is not an Administrative Claim, an Administrative Tax Claim, a Bankruptcy Fee, a Priority Tax Claim, or a Secured Claim.

1.71    "**Unsecured Creditor**" means the Holder of an Unsecured Claim.

1.72    "**Unexpired Lease**" means an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

## ARTICLE 2.

### TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims. Such Claims, to the extent Allowed, shall receive the treatment provided in this article 2 in full satisfaction, release and discharge thereof.

2.1    **Administrative Bar Date**. Except as otherwise provided in sections 2.2, 2.3 and 2.4 of the Plan, requests for payment of Administrative Expenses must be filed no later than the Administrative Bar Date. Holders of Claims for payment of Administrative Expenses that do not file requests for the payment of Administrative Expenses on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Debtor or its Property.

2.2    **Professional Compensation and Reimbursement**. Each Person seeking an award by the Bankruptcy Court of Professional Fees shall file its final application for approval of its

Professional Fees no later than 60 days after the Administrative Bar Date. Each Holder of an Allowed Claim for Professional Fees shall receive from the Disbursing Agent, in full satisfaction of such Allowed Claim, Cash in the amount of such Allowed Claim within three days of the entry of a Final Order Allowing such Claim.

2.3    **Administrative Claims**. Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of (x) 30 days after the Closing Date, (y) the date payment of such Claim is due under the terms thereof or applicable law, or (z) three business days after such Claim becomes an Allowed Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Debtor and the Holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full or performed by the Debtor in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.4    **Administrative Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, all allowed Administrative Tax Claims held by Governmental Units shall be paid, in Cash, in full either (i) within 30 days of the Closing Date, or (ii) upon such other terms as may be agreed to, in writing, between the Debtor and such Governmental Units on or before the Confirmation Date.

2.5    **Priority Tax Claims.** Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental

Units, all allowed Priority Tax Claims shall be paid in Cash in full, together with the Applicable Rate of Interest within 30 days of the Closing Date.

2.6    **Bankruptcy Fees.**  All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code and any applicable interest thereon shall be paid in full as required by statute and until the closing, conversion or dismissal of this Case, whichever is earlier, the Debtor shall continue to be responsible for the payment of any such fees and charges.

## ARTICLE 3.

## CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in article 2, Allowed Claims and Allowed Interests are classified as set forth in this article 3.  A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1    **Class 1 – Deutsche Bank Secured Claim**. Class 1 consists of the Deutsche Bank Allowed Secured Claim.

3.2    **Class 2 – Other Secured Claims.** Class 2 consists of all Allowed Secured Claims other than the Class 1 Deutsche Bank Secured Claim.

3.3    **Class 3 – Unsecured Claims.**  Class 3 consists of all Allowed Unsecured Claims.

3.4    **Class 4 –Interests.**  Class 4 consists of all Interests in the Debtor.

**ARTICLE 4.**

**TREATMENT OF CLAIMS AND INTERESTS**

Allowed Claims in Classes 1, 2, and 3 are unimpaired and are deemed to accept the

Plan and are not entitled to vote to accept or reject the Plan.  Allowed Interests in Class 4 are either

unimpaired and therefore deemed to accept the Plan or are impaired and shall be deemed to reject the

Plan.  Accordingly, Class 4 Interests are not entitled to vote to accept or reject the Plan.

The members of each Class shall receive the following treatment under the Plan in

full satisfaction, release and discharge thereof.

4.1    **Class 1 – Deutsche Bank Secured Claim.**  In full satisfaction, release and

discharge of the Deutsche Bank Allowed Secured Claim, Deutsche Bank shall receive payment in

accordance with the Deutsche Bank Settlement Stipulation attached hereto as Exhibit A, which

provides for payment to be made from the Sale Proceeds to Rialto Capital Advisors, LLC, as special

servicer, for the benefit of Deutsche Bank, in an amount equal to: $33,450,000 plus the full amount

of any Adequate Protection Payments due under the Cash Collateral Order for the months of March,

April, May and June 2015 to the extent not paid by the Debtor, less application of all amounts held

by Deutsche Bank in reserves, which amounts shall be retained and applied against the amounts

owing Deutsche Bank, and which payment shall be made on or before June 15, 2015.

4.2    **Class 2 – Other Secured Claims.**  Subject to the provisions of Article 7 of

the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of each Other

Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at or within 30 days

of the Closing Date, or as soon as practicable after each such Other Secured Claim becomes an

Allowed Claim, (i) Cash, in the full amount of its Claim, or (ii) such other treatment as to which the

Debtor and each Holder of such Allowed Other Secured Claim shall have agreed upon in writing.

      4.3    **Class 3 – Unsecured Claims.**  Subject to the provisions of Article 7 of the

Plan, with respect to Disputed Claims, in full satisfaction, release and discharge of and in exchange

for each Unsecured Claim, the holders of Allowed Unsecured Claims shall receive on the later of :

(1) 30 days after the Closing Date; (2) the date an order resolving an objection to claim becomes a

final order; or (3) the date an order resolving any pending appeal becomes a final order, the full

amount of their Allowed Unsecured Claim plus such interest as may be legally allowable on such

Claim at the Applicable Rate of Interest. Such interest shall accrue from the Petition Date to the date

of distribution and be paid in Cash.

      4.4    **Class 4 – Interests.**  After payment is made in full, (or appropriate amounts

reserved for payment in full) an account of all Allowed Claims, and appropriate amounts reserved

for Disputed Claims as set forth in Section 7.7 of this Plan, as well as for ongoing expenses of

administration of the Estate (estimated to be $350,000), in full satisfaction, release and discharge of

and in exchange for its interest in the Debtor, the remaining balance of the Sale Proceeds and

Debtor's Available Cash, if any, shall be distributed to AC I Manahawkin Mezz LLC, the 100%

Interest Holder in the Debtor.   After the Closing, all Interests in the Debtor shall be canceled and of

no further force and effect.

      4.5    **Special Provision Regarding Unimpaired Claims**.  Except as otherwise

explicitly provided in this Plan, nothing shall effect, diminish or impair the Debtor's rights and

defenses, both legal and equitable, with respect to any Unimpaired Claims, including, but not limited to, legal and equitable defenses to setoffs or recoupment against Unimpaired Claims, or recharacterization of Unimpaired Claims.

**ARTICLE 5.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

5.1     **Assumption and Assignment of Executory Contracts and Unexpired Leases.**  Upon the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party and which were set forth on Schedule D to the APA, shall be assumed by the Debtor and thereafter upon the Closing Date, assigned to the Purchaser in accordance with Section 365 of the Bankruptcy Code and the Sale Approval Order.   All other Executory Contracts and Unexpired Leases to which Debtor is a party, including, but not limited to any management agreements with Armstrong Management and/or Marsyll Maintenance Corp. shall be rejected as of the Effective Date.  Upon rejection, Armstrong Management and Marsyll Maintenance Corp. shall turn over all records in their possession that pertain to the Debtor and the Property.

5.2     **Assumption Cure Payments**.  In accordance with the Sale Approval Order at paragraph 15 thereof, and other than the agreement with the TJX Companies, Inc., as set forth at paragraph 16 of the Sale Approval Order, there are no assumption cure payments due in connection with the Leases to be assumed and assigned to Purchaser.

5.3     **Rejection Claims.** Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as Unsecured Claims**.**

5.4    **Bar to Rejection Claims.**  A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Debtor no later than 30 days after the later of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely filed unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), or (ii) the Effective Date.  Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the Debtor, its successors or their respective properties.

ARTICLE 6.

IMPLEMENTATION OF THE PLAN

6.1    **Implementation.**  The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to, among other things, (i) execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of the Property required by the Plan and to perform and any act, including the satisfaction of any lien, and/or the release of any judgment that is necessary for the consummation of the Plan.

6.2    **Plan Funding**.  Funding for the Plan payments shall be from the Sale Proceeds as supplemented by any Available Cash on hand on the Closing Date.

6.3     **Transfer Taxes.**  In furtherance of the Sale Approval Order and this Plan, and pursuant to N.J.S.A. 46:15-10 and section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan, (including any instrument executed in furtherance of the transactions contemplated by the Plan), shall be exempt from and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, in connection with or in furtherance of the Plan and the funding requirements contained herein, and to the extent provided by 1146(a), if any, shall not be subject to any state, local or federal law imposing such tax.

6.4     **Vesting of Assets.**  Except as otherwise provided in the Plan, on the Closing Date the Property and the Purchased Assets as that term is defined in the APA shall vest in the Purchaser free and clear of all Liens, Claims and encumbrances. On the Closing Date, any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan or the Sale Approval Order shall be deemed extinguished as of such date. Any remaining property of the Estate shall re-vest in the Post-Effective Date Debtor who may operate, buy, use, acquire, and dispose of the property of the Estate and may settle and compromise any claims, interests and causes of action in accordance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.

6.5     **Execution of Documents.**

(a)     On the Effective Date, the Debtor, and any necessary party thereto, shall execute, release and deliver all documents reasonably necessary to consummate the transactions contemplated by the terms and conditions of the Plan.

(b)    Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code,

the Debtor shall be authorized to execute, in the name of any necessary party any estoppel certificate,

or any notice of satisfaction, release or discharge of any Lien, Claim or encumbrance (including, any

Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with

the provisions of article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to

any and all federal, state and local governmental agencies or departments for filing and recordation,

and the Confirmation Order shall expressly so provide.

6.6    **Filing of Documents.**  Pursuant to sections 105, 1141(c) and 1142(b) of the

Bankruptcy Code, each and every federal, state and local governmental agency or department, shall

be directed to accept and record any and all documents and instruments necessary, useful or

appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and

any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or

encumbrance not expressly preserved by the Plan.

6.7    **Preservation of Rights of Action.**

(a)  Except as otherwise provided in the Plan, or in any contract, instrument,

release or other agreement entered into in connection with the Plan, the Debtor shall retain any

claims, rights and causes of action (i) arising under sections 510 and 544 through 550 of the

Bankruptcy Code or (ii) belonging to the Debtor as of the Petition Date, or the Estate of the Debtor,

and arising under any provision of state or federal law, or any theory of statutory or common law or

equity.

(b)        Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or cause of action, following the satisfaction under the terms of the Plan of all other Allowed Claims (or reserving appropriate amounts for payment in full an account of all Allowed Claims), reserving appropriate amounts for Disputed Claims as set forth in Section 7.7 of this Plan, and reserving appropriate amounts to satisfy ongoing expenses of administration of the Estate, shall be paid to AC I Manahawkin Mezz LLC, the 100% Interest Holder in the Debtor.

(c)        Notwithstanding any provision of the Plan to the contrary, definitions and descriptions contained herein respecting pre-Petition Date documents, agreements or claims are provided solely for the purpose of identification and classification thereof and do not constitute an admission by the Debtor of the existence, validity allowance, or amount of any such claim, document or agreement.  The Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any such claim, document or agreement.

6.8        **Post-Effective Date Debtor**.  The Debtor shall continue in existence as the Post-Effective Date Debtor who shall continue to be managed by GC Realty Advisors LLC and whose activities shall be limited to matters related to the implementation of this Plan and matters reasonably incidental thereto.  The Post-Effective Date Debtor will have all of the rights, powers and duties necessary to carry out its responsibilities under this Plan.  As soon as practicable after the Closing, the Post-Effective Date Debtor shall take all necessary steps to effectuate its dissolution in accordance with applicable law.

**ARTICLE 7.**

## PROVISIONS GOVERNING DISTRIBUTIONS

7.1    **Disbursing Agent.**  Other than the payments to be made at the Closing, the Disbursing Agent shall distribute all Cash or other property to be distributed under the Plan and may employ or contract such third parties as may be necessary to assist in or perform the distribution of Cash or other property under the Plan.  Pending the final distribution of all sums distributable under the terms of the Plan (including the delivery to the Debtor of unclaimed distributions pursuant to section 7.14 of the Plan), the Disbursing Agent shall have full authority to sign checks on any bank account of the Debtor to the extent necessary to make any payment or distribution contemplated by the Plan.

7.2    **Timing of Distributions Under the Plan.** Subject to sections 7.6 and 7.8 of the Plan, any payments, distributions or other performance to be made pursuant to the Plan on account of any Disputed Claim, shall be deemed to be timely made if made on or within ten days following the later of (i) the expiration of any applicable objection deadline with respect to such Disputed Claim or (ii) such other times provided in the Plan.

7.3    **Method of Payment.**  Unless otherwise expressly agreed, in writing, all Cash payments to be made pursuant to the Plan shall be made by wire transfer or check drawn on a domestic bank.

7.4    **Claims Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court for cause, the Debtor may file and serve any objection to any Claim or Interest at any time, but in no event after the later to occur of (i) 60 days after the Effective Date, or (ii) 60 days after the date proof of such Claim or Interest or a request for payment of such Claim is filed.

7.5    **Prosecution of Objections.**  After the Confirmation Date, only the Debtor shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims.  The Debtor may comprise any objections to Disputed Claims without further order of the Court.

7.6    **No Distribution Pending Allowance.**  Notwithstanding any other provision of the Plan, no payment or distribution of any kind shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7    **Escrow of Cash Distributions.**  (a)  On any date that distributions are to be made under the terms of the Plan, the Disbursing Agent shall make available any and all funds required under Plan to be disbursed on that date, and the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash that would be distributed on such date on account of Disputed Claims as if each such Disputed Claim were an Allowed Claim but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims that may be entitled to treatment as Administrative Claims or as Priority Non-Tax Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax, (iii) any disputed Cure Amount, and (iv) any amount due but not payable on the Effective Date on account of Administrative Claims or claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code.  The Disbursing Agent shall also segregate any interest, dividends or other proceeds of such Cash.  Such Cash together with any interest, dividends or proceeds thereof, be held in trust for the benefit of the Holders of all such Disputed Claims pending determination of their entitlement thereto.

(b)      The Disbursing Agent or the Debtor shall have the right to seek an Order of the Bankruptcy Court, after notice and hearing, estimating or limiting the amount of Cash that must be so deposited on account of any Disputed Claim.  Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited.  Such Creditor shall have recourse to the undistributed assets in the Disputed Claims Reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order, or not yet resolved.

7.8      **Distribution After Allowance.**  Within 15 days after the entry of a Final Order resolving an objection to a Disputed Claim, the Disbursing Agent shall distribute all Cash or other property, including any interest, dividends or proceeds thereof, to which a Holder is then entitled with respect to any formerly Disputed Claim that has become an Allowed Claim.

7.9      **Investment of Segregated Cash.**  To the extent practicable, the Disbursing Agent may invest any Cash segregated on account of a Disputed Claim, disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash or proceeds.  Segregated Cash shall be maintained in an authorized depository.

7.10    **Distribution After Disallowance.**  Subject to section 7.7 of the Plan, the Cash segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof, if any, remaining after all Disputed Claims have been resolved by Final Order shall revert to the Post-Effective Date Debtor and thereafter shall be distributed to AC I Manahawkin Mezz LLC, the Debtor's 100% Interest Holder.

7.11    **Surrender of Instruments; Execution of Satisfactions and Releases.**

(a)  Notwithstanding any other provision of the Plan, no Creditor that holds a note or other instrument evidencing such Creditor's Claim may receive any distribution with respect to such Claim unless and until the original note or other original instrument evidencing such Claim shall have been validly surrendered to the Disbursing Agent at the sole cost and expense of such Creditor.

(b)    Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(c)    In the event any Creditor is unable to surrender a note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such entity may receive a distribution with respect to such Claim by presenting to the Disbursing Agent, in a form acceptable to the Disbursing Agent: (i) proof of such entity's title to such Claim; (ii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iii) such indemnification as may be required by the Disbursing Agent and all other entities deemed

appropriate by the Disbursing Agent from any loss, action, suit or any claim whatsoever which may

be made as a result of such entity's receipt of a distribution under the Plan.

(d)        All questions as to the validity, form or eligibility of any note or other

instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy

Court.  The Disbursing Agent shall not be under any duty to give notification of defects in such

tender or shall incur liability for failure to give notification of such defects.

7.12    **Delivery of Distributions.**  Except as provided in sections 7.13, 7.14 and 7.15

of the Plan, distributions to Holders of Allowed Claims and Allowed Interests shall be made: (1) at

the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such Holders;

(2) at the addresses set forth in any written notices of address changes delivered to the Disbursing

Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if

no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written

notice of a change of address.

7.13    **Undeliverable Distributions.**  (a)  If the distribution to the Holder of any

Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be

made to such Holder unless and until the Disbursing Agent is notified in writing of such Holder's

then current address.  Undeliverable distributions shall remain in the possession of the Disbursing

Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such

undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

(b)        Until such time as an undeliverable distribution becomes an unclaimed

distribution pursuant to section 7.14 of the Plan, within 30 days after the end of each calendar quarter

following the Effective Date, the Disbursing Agent shall make distributions of all Cash that has

become deliverable during the preceding quarter. Each such distribution shall include the net return

yielded from the investment of any undeliverable Cash, from the date such distribution would have

been due had it then been deliverable to the date that such distribution becomes deliverable.

(c)    Nothing contained in the Plan shall require the Debtor of the

Disbursing Agent to attempt to locate any Holder of an Allowed Claim or an Allowed Interest.

7.14    **Unclaimed Distributions.**  Any Cash or other assets to be distributed under

the Plan shall revert to the Post-Effective Date Debtor and thereafter shall be distributed to AC I

Manahawkin Mezz LLC, the Debtor's 100% Interest Holder, if it is not claimed by the entity entitled

thereto before the later of (i) one year after the Effective Date; (ii) one year after such scheduled

payment to such entity under Article 4 of this Plan; or (iii) one year after an Order allowing the

Claim of that entity becomes a Final Order, and such entity's claim shall be reduced to zero.

7.15    **Set-offs.**  The Disbursing Agent, may, but shall not be required to, set-off

against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of

action and liabilities of any nature that the Debtor may hold against the Holder of an Allowed Claim,

*provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim

hereunder shall constitute a waiver or release by the Debtor of any such claims, obligations, rights,

causes of action and liabilities that the Debtor has or may have against such Holder.  To the extent

the Debtor elects to effectuate a set-off, it shall notify the Holder of the Allowed Claim in writing at

least ten (10) days prior to effectuating the set-off.  To the extent the Holder of an Allowed Claim

objects to the set-off, a written objection shall be provided to the Debtor, as Disbursing Agent, no

later than three (3) days prior to the set-off date or the objection shall be waived.

## ARTICLE 8.

### INJUNCTION AND EXCULPATION

8.1 **Injunction.** (a) Except (i) as otherwise provided under Final Order

entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan,

the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with

respect to any Claim held against the Debtor as of the date of entry of the Confirmation Order (i)

the commencement or continuation of any action, the employment of process, or any act to

collect, enforce, attach, recover or offset from the Debtor, from the Property, or from property of

the Estate that has been or is to be distributed under the Plan, and (ii) the creation, perfection or

enforcement of any lien or encumbrance against the Property and any property of the Estate that

has been or is to be, distributed under the Plan.  Except as otherwise provided in the

Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against

the commencement or continuation of any action, the employment of process, or any act to

collect, recover or offset from the Debtor, from the Property, or from property of the Estate, any

claim, any obligation or debt that was held against the Debtor by any person or entity as of the

Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order

shall permanently enjoin all Creditors, their successors and assigns, from enforcing or seeking to

enforce any such Claims.

8.2 **Limitation of Liability**.  To the extent permitted under Section 1125(e) of

the Bankruptcy Code, neither the Released Entities nor any of their respective officers, directors,

or employees (acting in such capacity) nor any professional person employed by any of them,

shall have or incur any liability to any entity for any action taken or omitted to be taken in

connection with or related to the formulation, preparation, dissemination, Confirmation or

consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other

agreement or document created or entered into, or any other action taken or omitted to be taken

in connection with the Plan, except in the case of fraud, gross negligence, willful misconduct,

malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential

information that causes damages, or ultra vires acts.    Nothing in this Section 8.2 shall limit the

liability of the Debtor's professionals pursuant to Rule 1.8 (h)(1) of the New York State Rules of

Professional Conduct. Nothing in the Plan or the confirmation order shall effect a release of any

claim by the United States Government or any of its agencies or any state and local authority

whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the

environmental laws or any criminal laws of the United States or any state and local authority

against the Debtor or any of its respective members, shareholders, officers, directors, employees,

attorneys, advisors, agents, representatives and assigns, nor shall anything in the Plan enjoin the

United States or any state or local authority from bringing any claim, suit, action or other

proceedings against the Debtor or any of its respective members, shareholders, officers, directors,

employees, attorneys, advisors, agents, representatives and assigns for any liability whatever,

including without limitation, any claim, suit or action arising under the Internal Revenue Code,

the environmental laws or any criminal laws of the United States or any state or local authority,

nor shall anything in this Plan exculpate Debtor or any of its respective members, shareholders,

officers, directors, employees, attorneys, advisors, agents, representatives and assigns from any

liability to the United States Government or any of its agencies or any state and local authority

whatsoever, including liabilities arising under the Internal Revenue Code, the environmental laws

or any criminal laws of the United States or any state and local authority**.**

8.3     **Release**.  Except as otherwise provided in the Plan, upon the Effective

Date, in consideration of the Cash and other property to be distributed to or on behalf of the

holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes

and constitute a settlement and release, between and among the Debtor, on the one hand, and

each Creditor and Interest Holder, on the other, from any claim or liability, whether legal,

equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed,

matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or

Interest Holder ever had or now have through the Effective Date in connection with their Claim

or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or

on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the

Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on

behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business

affairs prior or subsequent to the commencement of the Case or any claims based on the

negotiation, submission and confirmation of the Plan).

### ARTICLE 9.

### MISCELLANEOUS PROVISIONS

9.1     **Orders in Aid of Consummation.**  Pursuant to sections 105, 1141, 1142 and

1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of

Confirmation directing the implementation of matters or actions required by the Plan.

9.2     **Compliance with Tax Requirements.**  In connection with the Plan, the Post-

Effective Date Debtor shall comply with all withholding and reporting requirements imposed by

federal, state and local taxing authorities and distributions under the Plan shall be subject to such

withholding and reporting requirements; *provided, however,* that the transfer of any Cash, or other

assets or interests hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.3  **Due Authorization by Creditors.**  Each and every Creditor who accepts the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4  **Amendments.** The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in sections 1101 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.  Any substantive modification shall require notice and a hearing before the Bankruptcy Court for approval of the proposed modification of the Plan. The Debtor in its own capacity and as the Disbursing Agent shall be deemed a Plan proponent for purposes of Section 1127 of the Bankruptcy Code.

9.5  **Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor or any other party in any further proceedings involving the Debtor or its Estate.

9.6  **Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all, impaired Classes of Claims, the Debtor may request confirmation under section

1129(b) of the Bankruptcy Code of any Class of Claims, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

9.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, and Debtor shall be responsible for the preparation and filing of any reports necessary until the entry of a Final Decree.  Debtor shall also pay any fees due the U.S. Trustee's Office until entry of a Final Decree.

9.8    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.9    **Computation of Time.**   In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.11    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)    if to the Debtor, at Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th floor, New York, New York 10022, Attn:  A. Mitchell Greene, Esq.;

(b)    if to any Creditor or Interest Holder, at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such Holders; (ii) the addresses set forth in

any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address;

   (c)  if to any entity that has filed a notice of appearance, at the addresses set forth on such notice of appearance;

   9.12 **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

   9.13 **Other Actions.** Nothing contained herein shall prevent the Debtor, Interest Holders, or Creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

   9.14 **Severability.** In the event any provision of the Plan is determined to be unenforceable such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

   9.15 **Business Day.** In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

**ARTICLE 10.**

**RETENTION OF JURISDICTION**

   10.1 **Retention of Jurisdiction.** Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date, until the Case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)    Insure that the Plan is consummated, and to enter any Order pursuant to section 1142(b) of the Bankruptcy Code, to compel the Debtor, its Interest Holder and any other necessary party, to take such action and execute such documents to effectuate the Plan;

(b)    Consider any modification of the Plan proposed pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019;

(c)    Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense, the resolution of any and all objections to the allowance or priority of Claims or Interests, and the resolution of any adversary proceeding;

(d)    Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)    Resolve any motions pending on the Effective Date to assume, assume and assign or reject any Executory Contract or Unexpired Lease to which the Debtor is a  party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)    Ensure that distributions to Holders of Allowed Claims and Allowed Interests are accomplished in accordance with the provisions of this Plan;

(g)    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements

or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of article 7 of the Plan;

(i)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any entity's obligations incurred in connection with the Plan;

(j)    Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(k)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(l)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(m)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(n)    Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order.

(o)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(p)    Enter an Order or Final Decree concluding the Case.

10.2    **Post-Closing Jurisdiction.**  Notwithstanding the entry of a final decree or an order closing the Case, the Bankruptcy Court shall retain jurisdiction to reopen the Case for the purpose of enforcing, by injunction or otherwise, the terms of the Plan, the Confirmation Order and any final decree, including, without limitation, the enforcement of any rights of the Debtor.

## ARTICLE 11.

### CONDITION TO THE EFFECTIVE DATE

11.1    **Condition Precedent to Effectiveness.** The Plan shall not become effective unless and until it has been confirmed and the following conditions has been satisfied or waived in full:

(a)    The Confirmation Order shall have been entered in this case and no stay or injunction shall be in effect precluding the consummation of the transactions contemplated by this Plan and the Confirmation Order shall not have been modified or vacated on appeal.

## ARTICLE 12.

### CLOSING THE CASE

12.1    **Substantial Consummation.**  Until the occurrence of the Effective Date and substantial consummation of the Plan, the Debtor, its Property and its Creditors shall be subject to further Orders of the Bankruptcy Court.

12.2    **Closing the Case.** Upon the substantial consummation of the Plan, the Debtor shall expeditiously move for the entry of a final decree closing the Case and such other relief as may be just and appropriate.

**Dated:**    New York, New York
April 30, 2015

AC I MANAHAWKIN, LLC
By its manager, GC Realty Advisors LLC

By: /s/ David Goldwasser
David Goldwasser,
Managing Member of GC Realty Advisors LLC

ROBINSON BROG LEINWAND
  GREENE GENOVESE & GLUCK P.C.
Attorneys for the Debtor
875 Third Avenue, 9th Floor
New York, New York 10022
Tel. No.:  (212) 603-6300

By: /s/ A. Mitchell Greene
     A. Mitchell Greene